574 A.2d 552

**Nancy G. BOLD, Appellant,**

v.

**Richard A. BOLD, Appellee.**

Supreme Court of Pennsylvania.

Submitted Oct. 26, 1989.

Decided April 23, 1990.

John R. Greisamer, Allentown, for appellant.

Mark Van Horn, David A. Eisenberg, Allentown, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

The question in this case is whether a spouse who supports his or her marital partner during the time that person is in school is entitled to recoup the value of that support upon a divorce, and if so, under what circumstances.

The facts of this case are that the parties were married in 1974, and Mrs. Bold came to the marriage with a college degree; Mr. Bold had completed some college. From 1974 through 1979 the parties lived in California, where Mr. Bold pursued a course of college study culminating in his graduation from the Los Angeles College of Chiropractic in 1979. Mr. Bold received veteran's benefits in excess of $12,000 while he was in school; he took out a student loan in the amount of $1,187; and he earned approximately $19,000 working at odd jobs during this period. During the years Mr. Bold was in school, Mrs. Bold earned more than $97,-000.[1]

In May of 1979 the parties moved from California and sold their house, realizing a profit of $24,984. The couple moved to Pennsylvania, where Mrs. Bold accepted a job earning $17,000 and Mr. Bold accepted a job earning $200 per week. He earned $3470 for the year. In February of 1980 Mr. Bold opened his own chiropractic practice and Mrs. Bold remained at the same job. Mrs. Bold moved out of the marital home in October, 1981 at the request of Mr. Bold, and moved into a one bedroom apartment. The earnings of Mrs. Bold and the net profit of Mr. Bold may be summarized as follows for the years 1981–1984:

---

[1]. This figure, which seems to differ from that used by Superior Court, is based on the trial court's Findings of Fact. Slip Op. at 5.

1981   $19,503/$18,542
1982   $22,161/$32,254
1983   $23,700/$37,023
1984   $26,363/$31,934 [2]

On May 12, 1981, Mrs. Bold filed a complaint seeking a divorce, equitable distribution, counsel fees, costs and expenses. A bifurcated divorce decree was entered by stipulation on April 26, 1984, and a master heard economic claims and filed a report and recommendation on January 24, 1986. The assets available for distribution are:

1.   Mr. Bold's office equipment valued at $8,095

2.   Two cars with a combined value of $5,500

3.   Mrs. Bold's stock holdings valued at $6,887

4.   Bank accounts totaling $540

5.   Equity in the marital house of $15,863 (From 1981 until 1984 Mr. Bold made insurance, mortgage and tax payments of $4,433.)

The trial court made the following distribution:

## EQUITABLE DISTRIBUTION

Now, March 23, 1986, IT IS HEREBY ORDERED AND DECREED that Nancy G. Bold, Plaintiff, execute a deed transferring all her right, title and interest to the premises known as 1803 Saratoga Court, Allentown, Lehigh County, Pennsylvania to Richard A. Bold, Defendant, upon notice of entry of this decree and that said deed shall be held in escrow by plaintiff's attorney until defendant pays to plaintiff the sum of $9,200.00.

IT IS FURTHER ORDERED that plaintiff shall retain as her separate property the following:

2.   In 1984, Mr. Bold also had interest income of $1,120.

| | |
|---|---|
| (a) Bristol Myers and Smith Kline stock | $ 6,887.00 |
| (b) 1974 Volkswagen | 2,500.00 |
| (c) All personal property listed on Exhibit "C" of the Master's Report followed by the designation "N" | 4,680.00 |
| Total | $14,067.00 |

IT IS FURTHER ORDERED that defendant shall retain as his separate property the following:

| | |
|---|---|
| (a) All office furnishings and equipment | $ 8,095.00 |
| (b) 1979 Dodge Aspen | 3,000.00 |
| (c) All personal property listed on Exhibit "C" of the Master's Report followed by the designation "R" | 4,002.00 |
| (d) First National Bank Accounts | 540.00 |
| Total | $15,637.00 |

## EQUITY AWARD [3]

IT IS FURTHER ORDERED that defendant pay to plaintiff the sum of $33,000.00 in reimbursement equity in equal monthly installments of $550.00 without interest to commence upon entry of this decree and continue sixty (60) months; should any installment be more than five (5)

---

3. The master had recommended that Mrs. Bold be awarded $33,000 in "reimbursement alimony." The trial court rejected this award and recast an award in the same amount as "reimbursement equity" pursuant to dicta in Superior Court's opinion in *Lehmicke v. Lehmicke*, 339 Pa.Super. 559, 489 A.2d 782 (1985). *Lehmicke* awarded equitable reimbursement to a wife who had supported her husband while he was in medical school, similar to this case. Although the issue of reimbursement alimony was not in that case because Mrs. Lehmicke had not preserved the issue for appellate review, the *Lehmicke* court stated:

   While the propriety of the denial [of alimony] is not before us as an issue we note that the lower court could properly have concluded that an equitable remedy was necessary in this case because of the unavailability of alimony to Mrs. Lehmicke. This is so because unlike the alimony provisions of some of the states whose cases were cited earlier in this opinion, our statute provides only for "rehabilitative alimony." An award of alimony in a case like the present one would be in the nature of "reimbursement" rather than "rehabilitation" and would therefore be inappropriate under the terms of the statute.

   339 Pa.Super. at 566–67, 489 A.2d at 786. (Footnote omitted).

days overdue, defendant shall pay interest at ten percent (10%) per annum on the over due amount.

## COUNSEL FEES, COSTS & EXPENSES

IT IS FURTHER ORDERED that defendant pay the sum of $5,444.27 to plaintiff's counsel, John Greisamer, Esquire, towards plaintiff's counsel fees, costs and expenses and that plaintiff be responsible for all other outstanding fees and costs. Said payment to be made within forty-five (45) days of the entry of this decree.

Both parties appealed this decree. Superior Court indicated that although it was aware of this Court's decision in *Hodge v. Hodge*, 513 Pa. 264, 520 A.2d 15 (1986), concerning whether alimony may be granted for reimbursement as well as for rehabilitation, the issue of *reimbursement alimony* was not preserved for appellate review. Superior Court, therefore, limited its review to the propriety of the award as an *equitable reimbursement.*[4]

**4.** In *Hodge v. Hodge*, 513 Pa. 264, 520 A.2d 15 (1986) this Court was evenly divided on the question of whether a person seeking alimony was required to establish, as a threshold requirement, that he or she was unable to support himself through property and employment so as to meet his reasonable needs. *See* 513 Pa. at 271, 520 A.2d at 17. (Lead Opinion of Mr. Justice Zappala). The statutory language of the Divorce Code, on which the disagreement was based, was as follows:

(a) The court may allow alimony, as it deems reasonable, to either party, only if it finds that the party seeking alimony:

(1) lacks sufficient property, including but not limited to any property distributed pursuant to Chapter 4, to provide for his or her reasonable needs; and

(2) is unable to support himself or herself through appropriate employment.

23 P.S. § 501(a) (Now amended as indicated below). Following this, in § 501(b), the old statute set out fourteen factors (now increased to seventeen) *to consider in deciding whether alimony was "necessary."* Three members of the Court interpreted this statutory scheme to mean that a person could not be awarded alimony unless, in essence, he could establish that he was unable to support himself. Once that criterion was met, then these members of the Court applied the fourteen *factors set out in Section* 501(b).

Three dissenting members took the more liberal view that the factors enumerated in 501(b) should be used to decide whether the party requesting alimony was able to "provide for his reasonable needs," the requirement of 501(a)(1). These justices would have

Relying on Superior Court's opinion in *Lehmicke v. Lehmicke*, 339 Pa.Super. 559, 489 A.2d 782 (1985), the Superior Court panel in this case observed that although a majority in *Lehmicke* approved an award of equitable reimbursement, it did not determine what expenses were to be reim-

awarded alimony "where necessary" based on equitable considerations of the sort enumerated in 501(b), without any initial determination that the party seeking alimony was unable to provide for his reasonable needs and was unable to support himself.

In 1988, the General Assembly amended Section 501 as follows: (a) Where a divorce decree has been entered, the court may allow alimony, as it deems reasonable, to either party, only if it finds that alimony is necessary.

(b) In determining whether alimony is necessary, and in determining the nature, amount, duration, and manner of payment of alimony, the court shall consider all relevant factors including:

(1) The relative earnings and earning capacities of the parties.

(2) The ages, and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties including but not limited to medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage; however, the marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony.

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 4, to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

Act of April 2, 1980, P.L. 63, No. 26, § 501, as amended Feb. 12, 1988, P.L. 66, No. 13, § 3.

bursed and therefore offered no guidance in this case. The panel then held that equitable reimbursement is available "only when one party has been unjustly enriched by financial contributions rendered which exceed that imposed by law." 374 Pa.Super. 317, 328, 542 A.2d 1374, 1379.

Because the evidence indicated that Mrs. Bold did not actually pay educational bills associated with Mr. Bold's academic degree, although she did work and support her husband while he attended school, her contributions did not exceed that required by law for the benefit of the family. The court determined, therefore, that Mr. Bold was not unjustly enriched and that the lower court's order directing Mr. Bold to pay $33,000 was in error. Superior Court also reviewed other matters not germane to this appeal, and on May 5, 1988 it reversed and vacated the decree of the trial court and remanded the case for proceedings consistent with its opinion. 374 Pa.Super. 317, 542 A.2d 1374. On July 18, 1988, Mrs. Bold filed a Petition for Allowance of Appeal, and this Court granted allocatur in order to address the question of when, if ever, equitable reimbursement is available to a spouse who has supported his or her marital partner while that person was in school.

As mentioned earlier, Section 501 of the Divorce Code, concerning alimony, is not asserted as a ground of recovery; instead, Mrs. Bold, the supporting spouse, relies upon Section 401(c), providing that Courts of Common Pleas shall have full equity power to protect the interests of the parties and effectuate the purposes of the act:

(c) In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this act, and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and

who is involved in or concerned with the disposition of the cause.

23 P.S. § 401(c).

It is axiomatic that an equity court is primarily interested in effecting fairness between the parties. It is equally plain that in order to do this, the court will consider, of necessity, all of the circumstances of the case, including, presumably, those circumstances mentioned in Section 501(b). Among the considerations listed in 501(b), is: "[t]he contribution by one party to the education, training or increased earning power of the other party." 23 P.S. § 501(b)(6). (Unchanged in the 1988 amendment). It follows, then, that Mrs. Bold's contribution to Mr. Bold's education is *a factor* to consider in determining whether she should be awarded any reimbursement under Section 401.

Superior Court apparently felt, however, that in order for Mrs. Bold's contribution to her husband's education to be considered, the contribution would have to exceed an amount she was legally required to contribute to her family. In other words, she would first have to show that she contributed more than was legally required, then Superior Court would consider her claim for equitable reimbursement. According to Superior Court, Mrs. Bold's contributions were merely legally mandated amounts, and Mr. Bold was not, therefore, unjustly enriched, but only the recipient of what was justly his.

Underlying Superior Court's decision is its concern that "[m]arriage is not a business enterprise which requires a strict economic accounting for all financial aid rendered during its course. Rather, each party owes the other a duty of support.... [E]quity will intervene only when one party has been unjustly enriched by financial contributions rendered which exceed that imposed by law." At 328, 542 A.2d at 1379.

A different view of the case is reflected in the rationale offered by the master, as described by the trial court:

He [the master] took into consideration the fact that defendant spent the first five years of the marriage in school. As a result of his education, defendant now has a substantial increase in his earning capacity. Defendant contributed approximately $5,300 per year, while plaintiff annually contributed three times that amount. That is, from 1974 through 1979, plaintiff invested $34,000 more than the defendant did into the marriage. Second, the master considered that the parties separated when defendant's increased earning potential was only beginning to be realized. Thus, plaintiff was precluded from enjoying the benefits of her five year investment in defendant, that is, in his potential for increased earnings. During that time, she sacrificed her ability to accumulate and to save assets, and her lifestyle. Finally, the master considered the different lifestyles that the parties now enjoy. Defendant has the benefit of tax deduction [sic], savings accounts, retirement plans, and expensive automobiles, while plaintiff drives a 1974 Volkswagen and lives in an apartment without the luxury of a shower.

Slip Op. at 10. Because there was insufficient marital property to compensate Mrs. Bold for her financial contributions to the marriage in excess of those made by Mr. Bold, the master and the trial court awarded Mrs. Bold a cash amount which the master called "reimbursement alimony" and which the trial court called "equitable reimbursement."

While we agree with Superior Court that marriage is not a business enterprise in which strict accountings are to be had for moneys spent by one spouse for the benefit of the other, it appears to us that this case does not involve strict accountings, but gross accountings. Supporting spouses in these cases feel entitled to reimbursement, we believe, not because they have sacrificed to support the other spouse, but because they are, to use a strong word, "jettisoned" as soon as the need for their sacrifice, albeit in part a legal obligation, comes to an end. In retrospect, perhaps unintentionally, the supporting spouse in such a case can be said to have been "used." At least this is the perception of the

supporting spouse, and we believe that this perception is not totally without foundation in all cases. On the other hand, we cannot completely disregard the legally imposed obligation of support. With a view to balancing the extremes, we hold, therefore, that separate and apart from the equitable distribution of marital property, *consistent with fairness*,[5] the supporting spouse in a case such as this should be awarded equitable reimbursement to the extent that his or her contribution to the education, training or increased earning capacity of the other spouse exceeds the bare minimum legally obligated support as reflected in the guidelines promulgated by this Court.[6]

Finally, Mr. Bold argues that even if equitable reimbursement should be awarded his wife, it should not be awarded in the form of cash payments when there is sufficient marital property available for distribution. We agree in principle with Mr. Bold's argument, but the property which the lower courts described as available for distribution does not equal the amount of Mrs. Bold's equitable distribution plus the amount of her equitable reimbursement, as determined by the trial court. Whether all of the existing property or some greater portion of the existing property should be distributed to the supporting spouse in an effort to decrease the amount of cash payments of "equitable

**5.** Among other matters of fairness, a court considering a claim for equitable reimbursement will have to consider the length of time the parties were married after the supported spouse began to enjoy the financial benefits of his or her increased earning capacity and the use to which these increased earnings were put. If the supported spouse contributed his or her increased earnings to the marriage and sufficient time has passed such that the supporting spouse has enjoyed these financial benefits commensurate with his or her contribution to the education or training that made them possible, equitable reimbursement would be inappropriate.

**6.** It is deceptive to reason, as Superior Court does, that because Mr. Bold paid his actual educational expenses through part-time jobs, loans and veteran's benefits, Mrs. Bold did not contribute to his educational costs. Had Mrs. Bold not earned in excess of $97,000 and had she not contributed this income to the family during the years Mr. Bold was in school, Mr. Bold would have been unable to expend his lesser earnings on educational expenses. Clearly, Mrs. Bold subsidized Mr. Bold's educational enterprise, and, therefore, paid, albeit indirectly, part of the cost of Mr. Bold's education.

reimbursement" is a matter for the sound discretion of the trial court, and we perceive no abuse of discretion in this case.

For the foregoing reasons, the judgment of Superior Court is vacated and the case is remanded to the Court of Common Pleas of Lehigh County for calculation of an amount of equitable reimbursement due Mrs. Bold consistent with this Opinion.[7]

ZAPPALA, J. files a dissenting opinion.

ZAPPALA, Justice, dissenting.

Today, the majority has grafted a new provision onto the Divorce Code not heretofore provided for or intended by the Legislature. In addition to equitable distribution and alimony, we now have "equitable reimbursement". This judicial creation provides monthly payments which cannot be awarded as alimony because the spouse did not qualify, and is in lieu of equitable distribution in instances when no property exists for distribution. The rationale for creating this new provision is that the supporting spouse has been "used". That rationale defiles the fundamental concept of marriage by reducing it to a balance sheet retroactively weighing individual efforts made at a time when the individual labors on behalf of the family unit.

Even under the Uniform Partnership Act, 15 Pa.C.S.A. § 8301 et seq., when a partnership dissolves, partners are not required to retroactively account for all expenditures undertaken throughout the relationship. Now, before entering into the ultimate partnership, each partner will be required to create a legal partnership under the Uniform

7. Were this case to arise under Section 501 as amended in 1988, it would have the same outcome. Whether the award is called equitable reimbursement or reimbursement alimony, the considerations determining the existence, the amount and the duration of the award are the same. Ultimately, the only criterion for fashioning the award under either analysis is fairness. Prior to the 1988 amendment to Section 501, courts were left to their own devices to fashion some definition of fairness. After the 1988 amendment, it is clear that the General Assembly's view of fairness in these circumstances implicates considerations that are similar to our own.

Partnership Act, to protect themselves from any unforeseen consequences should their marriage partnership dissolve. To me, such action appears absurd.

Because I cannot agree with this rationale nor the legal gymnastics employed by the majority to reach its result, I must dissent. The Court's holding today will only further exasperate an at times already very volatile and emotional union with the requirement that prospective spouses not only keep a strict accounting of finances during the marriage, but view "marriage" as an investment that requires the investor to continually monitor his or her "investment portfolio".

Section 102 of the Divorce Code sets forth the intended purpose of the Code:

(1) Make the law for legal dissolution of marriage effective for dealing with the *realities of matrimonial experience*.

\* \* \* \* \* \*

(3) Give primary consideration to the welfare of the family *rather than the vindication of private rights or the punishment of matrimonial wrongs*.

\* \* \* \* \* \*

(6) Effectuate economic justice between parties who are divorced or separated and grant or withhold alimony according to the actual need and ability to pay of the the [sic] parties and insure a fair and just determination and settlement of their property rights.

23 P.S. § 102 (emphasis added). The Legislature has directed us to take these objectives into consideration when construing provisions of the Code. 23 P.S. § 102(b).

In the 1980 version of § 501, alimony was arguably conditioned upon the inability to provide for oneself. This controversy was confronted and unresolved in *Hodge v. Hodge*, 513 Pa. 264, 520 A.2d 15 (1986). In that case, I adopted the view expressed by Judge Wieand in *Lehmicke v. Lehmicke*, 339 Pa.Super. 559, 573–574, 489 A.2d 782, 790

(1985) with regard to the realities of a marital relationship and its attending responsibilities:

The duty of support is imposed by rule of law on both spouses. Compliance with this legal duty does not result in unjust enrichment to the other. Marriage is for better or worse. It is not entered with a conscious intent that at some future time there will be an accounting of and reimbursement for moneys contributed to the support of the family. To inject such a concept would in my judgment, have far-reaching and unfortunate consequences. If I am correct in my view regarding the duty of spousal support, then it is difficult to perceive good reason for creating an exception which would reimburse a spouse for support contributed while the other is attending an institution of higher learning or otherwise obtaining advanced training.

Because § 501 clearly prohibits equitable alimony, the Appellant must rely upon § 401(c). But to support the application of § 401(c), the majority refers to the factors set forth in § 501(b). The majority accomplishes indirectly what it cannot accomplish directly.

This is not a situation in which one spouse is seeking reimbursement for expenditures that directly increase the other spouse's earning capacity. As the majority notes, Mrs. Bold did not actually pay educational expenses associated with her husband's academic degree. Rather, Appellant is seeking and the court is awarding a return of funds expended for the necessities of life. We now will require reimbursement of a spouse for a roof, food and clothing. This clearly was not intended by the Legislature.

Even under § 501, as amended, such a position is untenable. While I realize that the Legislature has removed the "inability to provide" prerequisite for alimony as alluded to in *Hodge*, alimony continues to be based on need and the Legislature has set forth the factors to be considered in evaluating that need. One such factor is the contribution made by one spouse to the education, training or increased earning power of the other party. 23 P.S. § 501(b)(6).

500

■■■■■■■

Thus, if a spouse is in need of assistance for a period of time to increase her/his earning capacity, alimony may be appropriate. Likewise, a spouse may receive a greater percentage, if not all, of the marital assets, if such an award is found to be appropriate after a review of all of the factors set forth in § 401. The legislature has provided a comprehensive scheme to resolve the economic issues in a failed marriage, keeping in mind the purposes set forth in § 102. This Court is now imposing new provisions that run contrary to those purposes. For the foregoing reasons I cannot agree with the majority and therefore dissent.