Joseph P. SCHENK, III, Appellee

v.

Joann M. SCHENK, Appellant
(Three Cases).

Superior Court of Pennsylvania.

Submitted Feb. 9, 2005.

Filed July 19, 2005.

Eileen C. Billey, Greensburg, for appellant.

William J. Wiker, Greensburg, for appellee.

Before: DEL SOLE, P.J., JOYCE and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 Joann Schenk, wife, appeals from the Decree entered following the October 16, 2001 Order regarding alimony *pendente lite*, and the January 14, 2004 Order determining equitable distribution and alimony. She also appeals the May 27, 2004 Order granting husband's complaint for a preemptory mandamus which suspended collection of husband's $518 per month alimony *pendente lite* (APL) obligation. The record reflects the following pertinent factual and procedural history.

¶ 2 The parties were married in October 1996 and separated in October 1999. They had one child, born March 31, 1999. Upon their separation, husband vacated the marital residence, a mobile home; wife remained in the residence with the child.

¶ 3 On November 16, 1999, wife filed a complaint for child and spousal support,[1] and on January 31, 2000, the court ordered husband to pay both. Shortly thereafter, in March 2000, husband filed a complaint in divorce.[2] In her answer, wife requested, inter alia, APL, and alimony upon entry of the divorce Decree.

¶ 4 In July 2000, the court entered an Order of shared legal custody, primary physical custody to wife, and partial physical custody to husband. Ultimately, the record reflects that the parties have shared custody of their son "fifty-fifty."

¶ 5 In September 2000, the court entered an Order which eliminated spousal support, and shortly thereafter, wife filed a petition for APL. In July 2001, a hearing officer recommended that wife receive $311 per month APL. Both parties filed exceptions to the recommendation and on October 16, 2001, the court ordered husband to pay wife $311 per month APL for eight months, retroactive to September 15, 2000, and ending in May 2001, when wife vacated the mobile home and, pregnant with her new boyfriend's child, moved in with her new boyfriend who supported her. Husband filed exceptions to the Order.

¶ 6 In January 2002, wife filed a petition in which she requested reinstatement of APL, alleging that she no longer lived with her boyfriend, and had moved to her parents' house with her two children. In March 2002, a hearing was held before a special master on wife's petition. The master recommended that APL be reinstated in the amount of $518 per month. The court entered a March 13, 2002 Order in accordance with that recommendation. Trial Court Order, 3/13/02.

¶ 7 In September 2003, a master was appointed to hear all remaining issues as to the divorce, including, inter alia, alimony, APL, property distribution, and counsel fees. In a January 14, 2004 Order, the court adopted the master's recommendations except as to equitable distribution and alimony. It adopted the master's equitable distribution schedule, except whereas the master awarded $2500 to wife which he said represented one-quarter the value of the mobile home, the court found that the mobile home had no equity and awarded it to husband. The court's distribution scheme awarded approximately thirty-three percent of the marital assets to wife and the remaining sixty-seven percent to husband. Also, the court rejected the master's recommendation that husband pay wife $150 per month alimony for twelve months, and instead held that husband is not obligated to pay alimony as it found that wife had received substantial alimony for an extended period of time based upon a marriage of only three years, she receives child support from two fathers, and is capable of obtaining employment as she is young and healthy and holds an associate's degree. The court also ordered husband to pay fees and costs before it would enter a divorce Decree. On January 29, 2004, wife filed a petition for reconsideration of the January 14, 2004 Order and, on February 13th, the motion not having been disposed of, she filed a timely appeal from the January 14, 2004

1. Domestic relations docket number 2377 DR 1999.

2. Trial Court docket number 442 of 2000–D.

Order.[3] Also on that day, wife filed an appeal from the court's October 16, 2001, alimony *pendente lite* Order.[4] This Court *sua sponte* consolidated these two appeals.

¶ 8 In March 2004, the court dismissed husband's exceptions to its October 16, 2001 Order as it had addressed the issues in its January 14, 2004 memorandum and Order, and it also denied wife's motion to reconsider the January 14, 2004 Order. Also in March 2004, husband filed with this Court a motion to quash wife's appeal, alleging that since no divorce Decree had been issued, the appeals from the equitable distribution Order and from the support Order were premature.

¶ 9 While that motion was pending, in May 2004, husband filed an application for a preemptory mandamus requesting that collection of his $518 APL obligation be suspended pending the outcome of wife's appeal. He complained that wife filed her appeal prior to the entry of a divorce Decree, thereby requiring him to continue to pay APL until the appeal is resolved. The court agreed and on May 27, 2004 entered an Order granting the preemptory mandamus, finding that wife's actions, in filing the appeal prematurely, bound appellant to continue paying APL until a decision by this Court. Wife also filed an appeal from this Order.[5]

¶ 10 This Court initially denied husband's motion to quash without prejudice to the parties to renew their arguments before the merits panel. In doing so, we noted that husband prevented entry of the divorce Decree because he had not yet paid the costs and fees as the trial court had ordered him to do. We also noted that although Orders of property distribution are not appealable until entry of a final divorce Decree, case law holds that an award of equitable distribution is appealable where a divorce Decree is entered while an appeal is pending. *See Campbell v. Campbell*, 357 Pa.Super. 483, 516 A.2d 363 (1986).

¶ 11 On January 31, 2005, we denied husband's motion to quash wife's appeal, and directed husband to pay such costs as necessary to assure a divorce Decree was entered prior to argument before this Court on February 9, 2005. In May 2005, this Court granted wife's motion for post submission communication, in which she included evidence that a Decree was entered on April 22, 2005.

¶ 12 Since a Decree was entered while the appeals were pending, pursuant to *Campbell*, the husband's motion to quash properly was denied and wife's appeals are now ripe for our review. Accordingly, we proceed to the merits of the appeals.

¶ 13 In her appeal of the court's equitable distribution award and its Order regarding APL, wife raises the following questions for our review:

1. Did the lower court err when it neither equally nor equitably divided the marital assets?

2. Did the lower court abuse its discretion when it did not consider the appellant's contribution to the education of the appellee/husband and

---

3. The appeal from the January 14, 2004 Order (trial court docket number 442 of 2000–D) is at Superior Court docket number 293 WDA 2004.

4. The appeal from the October 16, 2001 alimony *pendente lite* Order (domestic relations docket number 2377 DR 1999) is at Superior Court docket number 292 WDA 2004.

5. The appeal from the January 14, 2004 Order (trial court docket number 442 of 2000–D) is at Superior Court docket number 1104 WDA 2004. We note that although the court's Order from which wife appeals is dated May 27, 2004, it is docketed as May 28, 2004. Accordingly, wife's appeal filed on Monday, June 28, 2004 is timely.

his failure to contribute to the appellant/wife's education?

3. Did the trial court abuse its discretion when it failed to account for one of the two largest marital assets (double wide mobile home)?

4. Did the master and the trial court judge err by not awarding appellant/wife any portion of the appellee/husband's retirement funds?

5. Did the lower court judge abuse his discretion by denying alimony pendente lite for 10 months during the course of the divorce litigation?

Appellant's brief at 6.

¶ 14 In the context of an equitable distribution of marital property, a trial court has the authority to divide the award as the equities presented in the particular case may require. *Mercatell v. Mercatell,* 854 A.2d 609, 611 (Pa.Super.2004). "[E]quitable distribution does not presume an equal division of marital property and the goal of economic justice will often dictate otherwise.... We look at the distribution as a whole, in light of a trial court's overall application of the factors enumerated at 23 Pa.C.S.A. § 3502(a) [Equitable division of marital property]." *Id.,* at 612.

[O]ur standard for reviewing awards of equitable distribution is well settled. The trial court has broad discretion in fashioning such awards, and we will overturn an award only for an abuse of that discretion. To assess whether the trial court abused its discretion, we must determine whether the trial court misapplied the law or failed to follow proper legal procedure. Further, we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Hayward v. Hayward,* 868 A.2d 554, 557–558 (Pa.Super.2005) (citations omitted).

¶ 15 Wife makes very general allegations as to alleged inequity of the master's proposed equitable distribution, complaining that she received an unfair proportion of the marital estate. Appellant's brief at 19–20. She contends,

the master and the trial court should have considered her vocational skills that the master considered nearly worthless, her current employability at a minimum wage job, her contribution as a homemaker, her contribution to appellee/husband's education (school loans), the standard or living established during the marriage, her economic circumstances, and the fact that she is the primary custodian of the parties[] only child.

*Id.,* at 20. The only authority she cites in support of this argument is her referral to 23 Pa.C.S.A. § 3502, Equitable division of marital property, for "relevant factors." *Id.* We note that "it is the appellant's responsibility to precisely identify any purported errors." *Hayward, supra,* at 558, *citing Dudas v. Pietrzykowski,* 813 A.2d 1, 5 (Pa.Super.2002), *reversed on other grounds,* 578 Pa. 20, 849 A.2d 582 (2004). We remind wife that "[i]t is not the duty of the Superior Court to scour the record and act as appellant's counsel, and we decline to do so." *Id.* Wife's argument on this issue is simply inadequate to merit appellate review. *See id.* (reiterating that undeveloped arguments are waived).

¶ 16 Wife next argues that she contributed to husband's education, training, or increased earning power, by virtue of the fact that during their marriage, she alleges husband paid $8100 ($225 per month for three years) toward his premarital school loans using marital assets, but did not make any payments toward

hers.[6] Appellant's brief at 17–18, 20–21; Master's report, at 12; *see also* N.T., 1/15/03, at 142–143. She contends that pursuant to the doctrine of equitable reimbursement, the court should have distributed fifty percent of the marital assets to each party. Appellant's brief, at 18. She also contends an award of alimony or a lump sum award may serve the function of equitable reimbursement. Appellant's brief, at 20–21.

¶ 17 The courts of this Commonwealth have created the doctrine of "equitable reimbursement" as a method of compensating a spouse for his or her contribution to the marriage where the marital assets are insufficient to do so. *See Zullo v. Zullo,* 531 Pa. 377, 613 A.2d 544 (1992), and *Bold v. Bold,* 524 Pa. 487, 574 A.2d 552 (1990). This is often implemented via a schedule of monthly installment payments.[7] *Johnson v. Johnson,* 864 A.2d 1224, 1229–1230 (Pa.Super.2004).

¶ 18 In *Bold,* our Supreme Court found the doctrine properly was applied where wife supported husband financially, annually contributing more than three times the amount husband contributed, for the first five years of the marriage while husband completed his post-graduate degree. Husband's attainment of that degree resulted in a substantial increase in his earning capacity. Less than two years after husband graduated with a degree in chiropractics, he asked wife to move out. The Court held that "separate and apart from the equitable distribution of marital property, *consistent with fairness,* the supporting spouse in a case such as this should be awarded equitable reimbursement...." *Bold,* at 496, 574 A.2d at 556 (emphasis in original). In *Bold,* there was insufficient marital property to compensate wife for her financial contributions to the marriage. *Id.,* at 495, 574 A.2d at 556.

¶ 19 In *Lehmicke v. Lehmicke,* 339 Pa.Super. 559, 489 A.2d 782 (1985), wife worked to financially support her husband while he earned his medical degree. Less than one year after he attained his degree, the parties separated. This Court found wife was entitled to equitable compensation based upon the amount of her contributions to husband's education and increased earning capacity. *Id.* We noted that in another case, distribution of property might provide a full remedy but in *Lehmicke* there were no marital assets to be divided in this case. *Id.,* at 786.

¶ 20 The doctrine also has been applied to repay wife for husband's portion of marital debt, where there was a lack of marital property to satisfy their joint obligations. *Zullo, supra.* It has also been applied to compensate wife for lost equity in the marital home due to husband's failure to maintain mortgage payments, but there was insufficient marital property from which to fashion an equitable distribution award to compensate wife. *Twilla v. Twilla,* 445 Pa.Super. 86, 664 A.2d 1020 (1995).

¶ 21 It is clear from the above line of cases that equitable reimbursement is

---

6. Wife testified that husband told her he was making these payments, and she had proof of these payments from bank statements, but only for May through August of 1999. N.T., 1/15/03, at 210, 220–1. In contrast, husband testified that his student loans were in default and his wages were attached to pay them. When they were no longer in default, he asserts he deferred them. *Id.,* at 84.

7. Although the installment payments are similar in appearance to alimony, the two concepts are distinct. The purpose of equitable reimbursement is compensation, while the purpose of alimony is to ensure that the reasonable needs of the person who is unable to support him or herself through appropriate employment, are met. *See Twilla v. Twilla,* 445 Pa.Super. 86, 664 A.2d 1020, 1022 and 1023–1024 (1995).

nothing more than a method of compensating a spouse for that which is fairly due to him or her. Whether this compensation is achieved via equitable distribution, or via "equitable reimbursement" as it is when there is insufficient marital property available to compensate the spouse, the result is the same.

¶ 22 Here, included in the master's proposed equitable distribution is an award to wife of $1440, a figure which represents $40 per month for thirty-six months, i.e. the approximate duration of the parties' marriage, toward her school loans. Master's report, 9/10/03, at 20. The master apparently based this award on wife's testimony that she asked husband to pay $40 per month on the smaller of her two school loans.[8] *See id.*; *see also* N.T., 1/15/03, at 148. The trial court apparently agreed this was a fair result as to the issue of school loans, as it adopted the master's recommendation by its January 14, 2004 Order when it adopted all aspects of the master's proposed distribution scheme except as to the disposition of the mobile home. Trial Court Order, 1/14/04. As stated previously, we review Orders of equitable distribution using an abuse of discretion standard. *See Hayward v. Hayward*, 868 A.2d 554, 557–558 (Pa.Super.2005). Applying that standard as set forth in *Hayward*, we discern no abuse of the court's broad discretion as to this award.

██ ¶ 23 Next, wife complains that the court erred when it "failed to account for" the mobile home. Appellant's brief at 21. She argues that the court improperly excluded the double wide from the marital assets and insists that she should receive credit for a portion of the down payment on the mobile home, and the mortgage and tax payments she made. *Id.*, at 22. She also contends she is entitled to the fair rental value for the months that husband's mother and stepfather have been in the home. *Id.*, at 24–25.

¶ 24 The parties purchased the mobile home in approximately August or September of 1999 for approximately $15,000, with all or most of the down payment coming from a loan from husband's 401K.[9] N.T., 1/15/03, at 9. Husband left the marital residence when the parties separated in October 1999. *Id.*, at 10. From that time, until approximately April 2001, wife paid the loan payments, monthly lot fee and taxes on the home using her sole source of income—the support payments she received from husband. When wife moved out, she ceased making these payments. *Id.*, at 17. Husband was unable to assume the payments since he had just moved into an apartment in January of 2001 and was committed to a lease. *Id.*, at 18. He therefore entered an agreement with his mother and stepfather pursuant to which he would pay taxes on the home and they would move in and assume the loan, lot fee, and utility payments. *Id.* 22–23, 103–104. When the loan was paid in full, husband would transfer the home into their names. *Id.* Wife was pleased with this arrangement since "somebody... was going to take it... or at least make payments on it." *Id.*, at 174–175. At the time

8. Wife testified she had two school loans, the monthly payments for which were $40 and approximately $150, respectively, and the aggregate payoff was approximately $10,625. Master's report, at 12–13; N.T., 1/15/03, at 148, 150. Because they were not being paid, wife requested and received deferments on both loans. *Id.*, at 148–151.

9. Husband testified they paid $3,000 down and the payment came from his 401K. N.T., 1/15/03, at 9. Wife testified that they paid $4,000 down with the additional $1,000 payment made from a checking account. *Id.*, at 118.

husband made this agreement, the loan payoff was approximately $10,000. *Id.*, at 44. Husband testified that as of the time he made the agreement with his mother and stepfather, the mobile home was worth less than what was owed on it, i.e. there was no equity in the asset. *Id.*, at 44.

¶ 25 The master recommended an award to wife of "one quarter value of the mobile home at the time of purchase, which is $2500." [10] Master's Report, at 20. This included "her interest in the down payment, rental value, and credit for any real estate taxes paid." *Id.* He recommended that husband be awarded the mobile home. *Id.*, at 22.

¶ 26 The trial court concluded that the master erred in awarding to wife a sum of $2500 with respect to the mobile home because it found that there was no equity in it. Trial Court Order, 1/14/04. As evidence of that fact, the court noted husband's parents moved into the home and simply assumed the payments. Trial Court Memorandum, Driscoll, J., 1/14/04, at 1. The court also noted that there existed the risk of non-payment of the loan, lot rental, or taxes, which would result in immediate liability on husband's behalf, since he also ordered that wife would have no obligation for any indebtedness on the home. *Id.;* Trial Court Order, 1/14/04. The court concluded that the asset value

did not exceed the loan obligation, (Trial Court Memorandum, at 1) and awarded the mobile home to husband in its entirety. Trial Court Order, 1/14/04.

¶ 27 First we note that the court did not "exclude" the mobile home from the equitable distribution award. It found, rather, that it had no equity. This apparently was based upon husband's testimony and upon the nature of the agreement with husband's mother and stepfather. Wife presented no testimony or other evidence to the contrary. [11] *See* N.T., 1/15/03, at 180–182.

In determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property. Where the evidence offered by one party is uncontradicted, the court may adopt this value even thought the resulting valuation would have been different if more accurate and complete evidence had been presented. A trial court does not abuse its discretion in adopting the only valuation submitted by the parties. *Baker v. Baker,* 861 A.2d 298, 302 (Pa.Super.2004) (citations omitted). Based on the evidence of record, we cannot say the court abused its discretion in adopting this valuation. Further, we cannot say the court abused its discretion in its disposition of the mobile home under its equitable

---

**10.** It is not entirely clear what the master meant when he said "at the time of purchase." Master's Report, at 20. Husband testified that the original purchase price of the home was approximately $15,000. N.T., 1/15/03, at 9. Wife claimed the purchase price was $12,000. Record No. 39, Defendant's proposed findings of fact and suggested Order of court, at 2, ¶ 6. Presumably, by awarding wife "one quarter value of the mobile home at the time of purchase, which is $2,500.00," the master meant that at the time when husband's mother and step father pay off the loan, and the home is transferred into their names, it would have a value of $10,000. We

note that the master recognized that mobile homes depreciate in value. *See* Master's Report, at 20.

**11.** After the master's hearing, in her proposed findings of fact, wife argued that she is entitled to half of the $4,000 down payment, and half of the twenty monthly payments of $160, made from September 1999 until husband's mother and stepfather assumed the payments, i.e., she sought half of approximately $7,200. She claims this is "equity." Record No. 39, Defendant's proposed findings of fact and suggested order of court, at 2, ¶ 6, 16.

distribution scheme. As aptly stated by the master, the parties "walked away from this marital home and had another party take over the payments." Master's Report, at 12. Under husband's agreement with his mother and stepfather, husband will reap no financial benefit upon payment in full of the loan, except he will no longer be liable.[12] In the meantime, husband continues to be exposed to liability in the event that the expenses are not paid, but wife is absolved of any such liability.

¶ 28 In determining the propriety of an equitable distribution award, however, we must consider the distribution scheme as a whole. *See Mercatell v. Mercatell*, 854 A.2d 609, 612 (Pa.Super.2004).

Pursuant to 23 Pa.C.S.A. § 3502(a), [**Equitable division of marital property**], when fashioning equitable distribution awards, the trial court must consider: the length of the marriage; any prior marriages; age, health, skills, and employability of the parties; sources of income and needs of the parties; contributions of one party to the increased earning power of the other party; opportunity of each party for future acquisitions of assets or income; contribution or dissipation of each party to the acquisition, depreciation or appreciation or marital property, value of each party's separate property, standard of living established during the marriage; economic circumstances of each party and whether the party will be serving as custodian of any dependent children. The weight to be given to these statutory factors depends on the facts of each case and is within the court's discretion.

*Id.*, at 611; *see also* 23 Pa.C.S.A. § 3502(a). We also remain cognizant that "we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." *Hayward v. Hayward*, 868 A.2d 554, 558 (Pa.Super.2005).

¶ 29 As noted previously, the court's distribution scheme awarded approximately thirty-three percent of the marital assets to wife, or $3,349, and the remaining sixty-seven percent, or $6,854, to husband. We cannot say this award is economically unjust under the circumstances and in light of the factors enumerated above. The parties enjoyed a relatively short marriage of only three years. Although wife had worked only briefly, on a part-time basis for minimum wage, since the birth of the parties' son, at the time of the master's report, wife was twenty-six years old, healthy, and possessed an associate's degree; therefore, the master reasoned, she had the ability to work and earn a living for many years to come. Master's Report, at 16. He further noted that she had received several years of support and hoped she utilized it to obtain education or marketable skills. *Id.* Husband was twenty-nine years old, possessed a technical degree, and had a consistent work history. He was the couple's source of income during the marriage while wife stayed home with their child. The couple enjoyed a modest standard of living while they were married. *Id.* Currently, wife is making ends meet while husband enjoys a somewhat better standard of living. The parties share equally custody of their one son. Based upon these circumstances and the factors enumerated in Section 3502, we cannot say the trial court abused its discretion in its equitable distribution award.

¶ 30 Next, wife argues the court erred by not awarding wife any portion of husband's retirement funds. As part of his equitable distribution scheme, the master recommended that husband retain his

---

12. The loan for the mobile home was in his name only. N.T., 1/15/03, at 16.

401K savings plan which had a $4704 value as of the parties' October 1999 separation. Master's Report, at 7, 21. The court accepted this recommendation by its January 14, 2004 Order when it adopted all aspects of the master's proposed distribution scheme except as to the disposition of the mobile home. Trial Court Order, 1/14/04. Again, considering the distribution scheme as a whole, we find no abuse of the court's broad discretion in this respect.

¶ 31 In her appeal of the October 16, 2001 Order entered at domestic relations docket number 2377 D.R. 1999, wife contends the court erred by denying her APL for the months she lived with another man. We begin by addressing husband's arguments that wife waived this issue because she failed to include it in her concise statement of matters complained of on appeal.

¶ 32 On March 5, 2004, the court ordered wife to file a concise statement of matters complained of on appeal. Record No. 52, Trial Court Order, 3/5/04. Wife complied with that Order and on March 19, 2004 filed her statement which did not include the issue of APL. *See* Record No. 55. Appellants must comply when a trial court orders them to file a statement of matters complained of on appeal and any issue not raised in that statement is deemed waived. *See Glynn v. Glynn,* 789 A.2d 242, 249 (Pa.Super.2001); *see also Commonwealth v. Lord,* 553 Pa. 415, 420, 719 A.2d 306, 309 (1998). The Order in this case which directed wife to file the statement, however, specifically referred to lower court docket number 442 of 2000-D. The October 16, 2001 Order is at trial court docket number 2377 DR 1999. Husband notes that on March 10, 2004, this Court *sua sponte* consolidated the support and divorce cases for appeal purposes, and therefore, he contends, that "a prudent practitioner" should know to include all issues under both cases. Appellee's brief at 17. It may be the case that a prudent practitioner would do so, but since the court did not order wife to file a concise statement as to the "support case" we will not hold the issue is waived for her failure to include it in her statement as to the "divorce case."

¶ 33 We review APL awards under an abuse of discretion standard. *Haentjens v. Haentjens,* 860 A.2d 1056, 1062 (Pa.Super.2004). APL is "an order for temporary support granted to a spouse during the pendency of a divorce or annulment proceeding." 23 Pa.C.S.A. § 3103. APL "is designed to help the dependent spouse maintain the standard of living enjoyed while living with the independent spouse." *Litmans v. Litmans,* 449 Pa.Super. 209, 673 A.2d 382, 389 (1996). Also, and perhaps more importantly, "APL is based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare." *Id.,* at 388. APL is thus not dependent on the status of the party as being a spouse or being remarried but is based, rather, on the state of the litigation. *DeMasi v. DeMasi,* 408 Pa.Super. 414, 597 A.2d 101, 104–105 (1991). Alimony, in contrast, is terminated upon remarriage or cohabitation. *Id.,* at 104–105; *see also* 23 Pa. C.S.A. § 3706. Since, however, the purpose of APL is to provide the dependent spouse equal standing during the course of the divorce proceeding, it does not come with the "sanction" of Section 3706. *DeMasi,* at 104–105. "APL focuses on the ability of the individual who receives the APL during the course of the litigation to defend her/himself, and the only issue is whether the amount is reasonable for the purpose, which turns on the economic re-

sources available to the spouse." *Ha-entjens,* at 1062; *see also DeMasi,* at 105.

¶ 34 A hearing officer first heard arguments on the issue and filed a July 10, 2001 report in which she noted that neither adultery nor cohabitation is a defense to a petition for APL and therefore concluded that wife was entitled to it. In determining the proper amount of APL, she noted that the support guidelines recommended an award of $622 per month. *See* Hearing Officer's Report, 7/10/2001, at 7. She concluded, however, that deviation from the guidelines was proper since wife lived with her boyfriend, who "paid all of her bills," and thereby met the criteria for deviation of "other income in the household." *Id.; see also* Pa.R.C.P.1910.16-5(b)(3). She recommended a fifty percent deviation, for an award of $311 per month. The court entered the October 16, 2001 Order in which it granted husband's exception to this recommendation, and granted wife $311 per month APL only for the eight months from September 2000 to April 2001 when she lived alone, and denied her APL for the time when she lived with boyfriend, i.e., from May 2001 to March 2002. Trial Court Order, 10/16/01. The court noted wife's testimony that she had much difficulty paying her bills for the eight months in which she lived alone, but recognized that wife's boyfriend paid all of wife's living expenses when she lived with

him. Record No. 34, Trial Court Memorandum, Driscoll, J., 10/16/01, at 3. Because, however, the court found she provided no evidence as to any inability to maintain or defend the divorce action, or as to any attorney's fees incurred as a result of the divorce action, it found she failed to establish an ongoing need for APL.[13] *Id.* It therefore "upheld" the hearing officer's recommendation of $311 per month but only for the eight months she lived alone. *Id.; see also* Trial Court Order, 10/16/01.

¶ 35 Upon a review of the October 16, 2001 Order, it is clear immediately that there is a discrepancy. The hearing officer applied the support guidelines and found that an award of $622 per month APL was warranted but reduced that by fifty percent, to $311 per month, since wife lived with her boyfriend, and she recommended that the award be retroactive to September 15, 2000. It is unclear to this Court why the hearing officer reduced the guideline amount by fifty percent for the eight months that she did *not* live with her boyfriend, from September 2000 to April 2001. Following the hearing officer's logic, a more appropriate recommendation would have been $622 for the eight months that wife lived alone, followed by a reduction to $311 beginning in May 2001, for the time when she lived with her boyfriend.[14] In any event, the trial court rejected, in

13. The court noted, however, that wife could file for reconsideration if testimony could be presented to substantiate her claim, and could file a motion for modification if there was a change of circumstances. Record No. 34, Trial Court Memorandum, Driscoll, J., 10/16/01, at 3; *see also* Trial Court Order, 10/16/01. Wife filed a motion for reconsideration, but did not allege difficulty defending the action nor did she mention attorney's fees. Record No. 36, Wife's motion for reconsideration. The court denied the motion. Trial Court Order, 11/28/01. Ultimately, as noted above, in January 2002, wife filed a petition in which she requested reinstatement of APL,

alleging that she no longer lived with her boyfriend. In March 2002, a hearing was held before a special master on wife's petition. The master recommended that APL be reinstated in the amount of $518 per month. The court entered a March 13, 2002 Order in accordance with that recommendation. Trial Court Order, 3/13/02.

14. The $622 per month APL would have been appropriate until the Order of March 13, 2002 set APL at $518 per month from that point forward.

part, the hearing officer's recommendation. It denied wife APL for the time when she lived with boyfriend, and reduced the guideline amount by half *for the eight months that she did not live with the boyfriend.* This reduction for the time when she lived alone is illogical and may be an oversight on the part of the court, and perhaps is based upon the hearing officer's finding which appears to be erroneous. The court apparently felt wife was entitled to APL for the period she lived alone, but deviated from the guidelines with no apparent basis. *See Calibeo v. Calibeo,* 443 Pa.Super. 694, 663 A.2d 184 (1995) (noting that amended Pa.R.C.P. 1910.16–1(a) requires that alimony *pendente lite* be determined pursuant to the support guidelines); *see also* Pa.R.C.P. 1910.16–5(a) (stating that if the amount of support deviates from that determined by the guidelines, the trier of fact must specify in writing "the guideline amount of support, the reasons for, and the findings of fact justifying the amount of deviation"). Since wife did not raise this issue in this appeal but only challenged the denial of APL when she lived with her boyfriend, however, we can provide no relief on this issue.

¶ 36 As for the court's holding that wife is not entitled to APL for the time when she lived with boyfriend, we find no abuse of discretion. First, we note our agreement with husband that the court's rationale in denying wife APL for the time she lived with her boyfriend appears not to be based simply upon her cohabitation, but rather upon her failure to prove her needs in defending herself in the divorce action. Also, we note that there is no question that while she lived with her boyfriend, from May 2001 until approximately January 2002, he paid the bills for

the household. N.T., 7/3/01, at 8. Wife testified that she still had bills from the mobile home and it is clear that she had no source of income other than child support during this time. *Id.* Although wife was living with a man who paid the household living expenses, and perhaps her standard of living was similar to that which she enjoyed during the parties' marriage, given her meager economic resources, a complete denial of APL seemingly would have been unreasonable for wife to defend herself in this divorce. It would certainly appear that the parties were not on "equal footing" to defend themselves in the divorce action during this time. The master's recommendation of a deviation in the guidelines based upon the "other income in the household" appears to be more reasonable. With all of that said, however, wife petitioned for APL but provided no testimony as to her difficulty in defending the case. The court gave her an additional opportunity to do so, in filing a motion for reconsideration, but she again failed to come forth with such proof. "Alimony pendente lite is designed to be temporary and is available *to those who demonstrate the need for maintenance and professional services during the pendency of the proceedings.*" *Jayne v. Jayne,* 443 Pa.Super. 664, 663 A.2d 169, 176 (1995) (citations omitted, emphasis supplied). Wife failed to demonstrate her need. Accordingly, we find no abuse of the court's discretion.

¶ 37 Finally, we address wife's appeal of the court's May 27, 2004 Order granting husband a preemptory mandamus so as to suspend collection of APL during the pendency of the appeal. Wife contends that husband failed to prove a clear right to relief, did not prove a duty on the part of wife, and had the remedy of a petition for supersedeas.[15] Moreover,

---

15. In support of wife's argument that husband should have filed a supersedeas, she

she maintains the law provides that APL continues through pendency of appeals taken as of right.

¶ 38 Husband replies that wife should have filed a supersedeas pursuant to Pa. R.A.P. 1731(b) to avoid the effect of the January 14, 2004 Order, the intent of which he says was to terminate APL and deny wife's request for alimony. Husband also contends that since the appeal was taken prematurely, it is not an appeal as of right. We have already determined that because the divorce Decree has been entered since the filing of the appeals, they are ripe for our review, and there can be no question that this is an appeal as of right.

¶ 39 In any event, we find that regardless of the alleged procedural defects, case law is very clear that:

While APL typically ends at the award of the divorce decree, which also should be the point at which equitable distribution has been determined, if an appeal is pending on matters of equitable distribution, despite the entry of the decree, *APL will continue* throughout the appeal process and any remand until a final Order has been entered.

*Haentjens v. Haentjens*, 860 A.2d 1056, 1062 (Pa.Super.2004) (emphasis supplied), *quoting DeMasi v. DeMasi*, 408 Pa.Super. 414, 597 A.2d 101, 104 (1991). Further, this Court has held that APL should not continue automatically throughout discre-

tionary appeals, but that "public policy *requires* that the dependent party be entitled to support during the pendency of appeals as of right." *Prol v. Prol*, 840 A.2d 333, 335–336 (Pa.Super.2003) (emphasis supplied); *see also Haentjens*, at 1062–1063. This is clearly a case in which a divorce Decree has been entered and an appeal has been pending on matters of equitable distribution. Based on the above, wife was entitled to APL payments throughout her appeal as of right on matters of equitable distribution and the court erred in ordering otherwise. It is only upon this Court's disposition of this case and our affirmance of the divorce Decree that husband's obligation terminates. Accordingly, we reverse this Order.

¶ 40 Order at 292 WDA 2004 regarding alimony *pendente lite* is affirmed. Decree at 293 WDA 2004 is affirmed. Order of May 27, 2004 at 1104 WDA 2004, granting husband's petition for preemptory mandamus is reversed, and as to this matter only, this case is remanded for proceedings consistent with this Opinion.

---

cites Pa.R.A.P. 1731(b) and 1732(a) which provide:

An appeal from an order of child support, spousal support, alimony, alimony pendente lite, equitable distribution or counsel fees and costs shall operate as a supersedeas only upon application to and order of the trial court and the filing of security as required by subdivision (a). The amount and terms of security shall be within the discretion of the trial court.

Rule 1732(a) provides:

Application for a stay of an order of a lower court pending appeal, or for approval of or modification of the terms of any supersedeas, or for an order suspending, modifying, restoring or granting an injunction during the pendency of an appeal, or for relief in the nature of peremptory mandamus, must ordinarily be made in the first instance to the lower court, except where a prior order under this chapter has been entered in the matter by the appellate court or a judge thereof.