J-A21037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SILVIA SANTO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHAD BATTERMAN | : | |
| | : | |
| Appellant | : | No. 2721 EDA 2023 |

Appeal from the Order Entered September 26, 2023
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s): D17118516,
PACSES: 267116855

BEFORE: KUNSELMAN, J., NICHOLS, J., and BECK, J.

MEMORANDUM PER CURIAM:                    **FILED JANUARY 15, 2025**

Chad Batterman ("Batterman") appeals pro se from the order entered by the Philadelphia County Court of Common Pleas ("trial court") terminating his obligation to pay alimony pendente lite ("APL") to Silvia Santo ("Santo") on the date of the entry of the divorce decree. Batterman argues that the trial court abused its discretion in failing to consider the short duration of the parties' marriage, which warranted termination of APL on an earlier date. Upon review, we vacate and remand for further proceedings.

This case has an extremely lengthy procedural history, much of which is irrelevant to the matter before us. Briefly, Batterman and Santo were married in November 2014, separated in November 2017, and had two children together during the marriage. Santo filed a complaint in divorce on

November 29, 2017. Batterman filed an answer to the divorce complaint and a counterclaim.

The trial court set forth the subsequent procedural history as follows:

> [Santo] filed a petition to compel discovery on April 11, 2018, which this Court granted. [Batterman] also filed a petition to compel production of a document on May 9, 2018. By May 30, 2018, [Batterman] had not provided the discovery as ordered, and [Santo] filed a petition for sanctions. On June 13, 2018, these discovery issues were addressed briefly prior to a custody hearing and were continued by agreement to the next hearing on July 18, 2018. [On June 22, 2018, the trial court entered a support order, directing Batterman to pay, inter alia, APL to Santo, and making the award retroactive to November 29, 2017]. The divorce discovery issues were not addressed on July 18, 2018, so they remained outstanding. The parties' custody issues were resolved first, and issues related to the divorce remained outstanding until the onset of the COVID-19 pandemic, which further delayed proceedings at this point in the case. No further action occurred on these divorce proceedings until February 14, 2021.

> On February 14, 2021, [Batterman] filed an affidavit of separation under … 23 Pa.C.S. § 3101(d)[], a waiver of notice of intention to request entry of a divorce decree under … 23 Pa.C.S. § 3101(c)[], and an affidavit of consent to entry of a final divorce decree. …

> The [trial court] scheduled a status hearing for August 10, 2021[,] to address the unresolved issues regarding equitable distribution and three outstanding petitions: [Batterman]'s petition for counseling filed December 19, 2017; [Batterman]'s petition for sanctions filed May 9, 2018; and [Santo]'s petition for sanctions filed May 30, 2018. Counsel for both parties agreed they were ready to finalize the divorce except for these outstanding issues. [Batterman]'s attorney said he would advise [Batterman] of any outstanding discovery issues, would allow [Santo] 30 days to respond, then "if needed," he would "file a motion for more complete answers." Following this hearing, counsel was directed to contact the [trial court] if another status hearing was necessary.

After the August 10, 2021 hearing, [Batterman]'s attorney did not contact the [trial court] about any outstanding divorce issues for almost a year. He eventually requested – and was granted – leave to withdraw as counsel on October 12, 2022[,] and thereafter [Batterman] proceeded pro se.

The [trial court] scheduled status conferences on November 9, 2022[,] and December 15, 2022[,] to provide an opportunity to resolve outstanding issues and finalize the divorce. Both hearings had to be postponed. The status hearing was rescheduled to January 30, 2023[,] at 1:00 PM, after th[e trial c]ourt received confirmation that all parties were available.

On January 30, 2023, [Batterman] did not appear for the hearing and he also failed to appear at a child support enforcement hearing … that same day. [Batterman] … requested a continuance. …

Th[e trial c]ourt denied [Batterman]'s continuance request and allowed him to participate in the hearing by telephone with [Santo] and her counsel present in the courtroom. All parties confirmed on the record they were available for another hearing on March 15, 2023, and as such, one was scheduled for that date. …

On March 15, 2023, [Batterman] did not appear, despite previously confirming on the record he was available for a hearing at that time and date. At that time, th[e trial c]ourt expressed concern about prolonging these divorce proceedings while [Batterman] remained in fugitive status on his outstanding child support contempt bench warrant. [Santo]'s counsel reiterated his client's continued readiness to drop all her outstanding economic claims and petitions, in part because both parties had declared and completed bankruptcy proceedings, but also with the goal of finally resolving the divorce. Th[e trial c]ourt, in an abundance of caution[,] … entered an order that scheduled a hearing for April 5, 2023[.] … This order put [Batterman] on notice that if he failed to appear for that hearing, his outstanding petitions and claims raised in his December 22, 2017 answer to complaint in divorce and counterclaim would be dismissed.

On April 4, 2023 – while [Batterman] remained in fugitive, status – [Batterman] requested a continuance of the April 5, 2023 hearing date due to his observance of the Passover holiday. Even

- 3 -

though the hearing was scheduled on March 15 and the request was not made until April 4, the day before the hearing, th[e trial c]ourt granted [Batterman]'s continuance request.

The next hearing was scheduled for May 24, 2023. [Batterman] was given an opportunity to confirm his availability to schedule the next hearing, but did not respond …. An order was entered on May 11, 2023, giving notice to [Batterman] of the May 24, 2023 hearing and putting him on notice yet again that if he did not appear for that hearing, all of his outstanding claims and petitions would be dismissed. … Ultimately, [Batterman] did not appear for the May 24, 2023 hearing – the fifth attempt to resolve his outstanding claims – and he remained a fugitive at that time. Following the May 11, 2023 order, his outstanding claims were dismissed, as he had been informed would happen if he did not appear. … [A] final divorce decree was entered on August 22, 2023. …

On September 26, 2023, th[e trial c]ourt entered an order terminating [APL] effective retroactively to the August 22, 2023 entry of the divorce decree, subject to [Batterman]'s continuing liability for any arrears due thereunder. [Batterman]'s present appeal is from that September 26, 2023 order.

Trial Court Opinion, 12/26/23, at 11-16, 18 (citations omitted).

On appeal, Batterman argues that the trial court abused its discretion in failing to terminate APL prior the entry of the divorce decree. *See* Batterman's Brief at 2-3, 15. In effect, Batterman argues that the trial court should not have required him to pay APL to Santo for over six years despite the parties only being married for three years. *Id.* at 4, 15, 23. Batterman further takes issue with the trial court's finding that his actions delayed the conclusion of the divorce proceeding, contending instead that it was the trial court's actions that caused the excessive delay. *Id.* at 3-8, 10, 17, 24-26, 27. Batterman observes that he filed his answer and counterclaim to the divorce complaint

in December 2017, but the trial court did not schedule any hearings on the matter until 2023. *Id.* at 5. Batterman claims that missing hearings and his bench warrant for unpaid child support are not relevant to this appeal. *Id.* at 7, 8.

Batterman argues that Santo is also responsible for the delayed proceedings. *Id.* at 15, 22. Batterman emphasizes that he sent at least fifty settlement agreements to Santo to resolve the divorce, but Santo refused to accept the terms of his offers. *Id.* at 3, 12. He notes that Santo waited to withdraw her economic claims until 2023 despite her knowledge from the outset of the proceedings that there were no assets in the marital estate. *Id.* at 9-10.

Additionally, Batterman contends that he established he was unable to pay APL based upon his debt, lack of cash, he had closed his business, and an injury that prevented him from working. *Id.* at 10-12, 15-18, 19-20. Batterman asserts that that the trial court could not base his ability to pay APL on any money his parents had. *Id.* at 18-19. He further argues that Santo did not need APL, as she had the ability to work and had her expenses covered by her parents. *Id.* at 17, 18, 20, 21-23.

The Divorce Code provides that, "[i]n proper cases, upon petition, the court may allow a spouse reasonable [APL], spousal support and reasonable counsel fees and expenses." 23 Pa.C.S. § 3702.

> We review APL awards under an abuse of discretion standard. APL
> is an order for temporary support granted to a spouse during the

pendency of a divorce or annulment proceeding. APL is designed to help the dependent spouse maintain the standard of living enjoyed while living with the independent spouse. Also, and perhaps more importantly, APL is based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare. APL is thus not dependent on the status of the party as being a spouse or being remarried but is based, rather, on the state of the litigation.... [T]he purpose of APL is to provide the dependent spouse equal standing during the course of the divorce proceeding....

**Schenk v. Schenk**, 880 A.2d 633, 644–645 (Pa. Super. 2005) (citations and quotation marks omitted).

Relevantly, our Rules of Civil Procedure require that "[i]n determining a spousal support or [APL] obligation's duration, the trier-of-fact **shall** consider the marriage's duration, i.e., the date of marriage to the date of final separation." Pa.R.Civ.P. 1910.16-1(c)(2) (emphasis added); **see also** Pa.R.Civ.P. 1910.16-5(b)(8) (in deciding whether to deviate from spousal support or an APL obligation, courts must consider "the duration of the marriage from the date of marriage to the date of final separation"). The comment to Rule 1910.16-1 makes clear that subsection (c) "require[s] the court to consider the duration of the marriage in determining the duration of a spousal support or [APL] award," explaining:

The primary purpose of this provision is to prevent the unfairness that arises in a short-term marriage when the obligor is required to pay support over a substantially longer period of time than the parties were married and there is little or no opportunity for credit for these payments at the time of equitable distribution.

Pa.R.Civ.P. 1910.16-1, cmt. G.

In addressing Batterman's claim that "the duration of [APL] should be limited based on the limited duration of the parties' marriage," the trial court found that this was not a reason "that would permit [APL] to be terminated prior to the entry of a final divorce decree." Trial Court Opinion, 12/26/2023, at 22. Plainly, the trial court committed error by not considering the length of the parties' marriage in rendering its decision, as required by Rule 1910.16-1(c)(2). **See** Pa.R.Civ.P. 1910.16-1(c)(2); **see also** Pa.R.Civ.P. 1910.16-1, cmt. G. Although the length of the marriage is not the sole determiner of the length of an appropriate APL order, it is a factor that must be considered and can (potentially) allow APL to be terminated prior to the entry of the final divorce decree. **See** Pa.R.Civ.P. 1910.16-1, cmt. G. We are therefore compelled to vacate the trial court's order and remand for further proceedings wherein the trial court must account for the length of the parties' marriage, in addition to any other required factors, in determining whether APL was properly awarded to Santo for the six-year period.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/15/2025