# Groves's Appeal.

1. The court in divorce has power to make an order *pendente lite* for the wife's expenses, support, &c., and enforce it by attachment; this is a necessary incident to the court's jurisdiction.
2. Such order is not a judgment on which execution can issue, nor a lien on the husband's land, nor a decree in equity for the payment of money.
3. The 1st section of Act of April 15th 1845 (Divorce), does not extend to interlocutory decrees.

March 9th 1871. Before Thompson, C. J., Read, Agnew and Sharswood, JJ. Williams, J., at Nisi Prius.

Appeal from the Court of Common Pleas of *Schuylkill county*: No. 225, to January Term 1871.

This was a proceeding in the court below distributing the proceeds of the sale of the real estate of James Ruddy, deceased.

[Groves's Appeal.]

The real estate was sold September 1st 1866 to John Groves for $1200; he being a lien-creditor of the defendant, the sheriff took his receipt for $1114.58, and he paid the balance, $85.42, in cash.

James Ellis, Esq., was appointed auditor to make distribution of the proceeds of sheriff's sale.

Before him it appeared as follows: That there were three liens on Ruddy's property in favor of Grove, the last being entered November 15th 1865, on which were due of principal $840. Ann Ruddy, the wife of John Ruddy, to March Term 1866, commenced against him proceedings in divorce *a mensâ et thoro*. On the 12th of February 1866, the court made an order *pendente lite* on John Ruddy that he pay to his wife $60 to employ counsel, &c., $75 for past support, and $5 weekly for future support; this order was entered in the judgment docket against John Ruddy. On the same day, February 12th, another judgment was entered against Ruddy in favor of Groves for $500.

Mrs. Ruddy claimed that the order in her favor for alimony was a lien on Ruddy's land, and that she was entitled to the amount payable to her under it. The auditor, however, was of a different opinion and distributed the fund excluding her claim.

Upon exceptions to his report, the court (Ryan, P. J.) held that the order in favor of Mrs. Ruddy was a final decree, and being entered in the judgment docket became a lien. The matter was recommitted to the auditor, who, by a second report, awarded $227.50 to Mrs. Ruddy and $886.62 to Groves.

This report was confirmed by the court and the following · decree made:—

"The report of James Ellis having been finally confirmed, finding the sum of $227.50 of the money arising from the sale of the real estate of James Ruddy, to be due to Ann Ruddy, it is ordered, directed and decreed, that unless John Groves, the purchaser of the sheriff's sale, pay over the said sum of $227.50 within ten days after the date hereof, according to the Act of Assembly in such case provided, the said sale of said Ruddy's real estate be set aside, and that the same be resold according to the directions of said Act of Assembly."

Groves appealed to the Supreme Court, and assigned for error: —Confirming the last report of the auditor; and that part of the decree relating to setting aside the sheriff's sale.

*B. W. Cummings*, for appellant, referred to Act of April 15th 1845, § 1, Purd. 350, pl. 25, Pamph. L. 455.

*J. W. Ryon*, for appellee, referred to same act: Breinig *v.* Breinig, 2 Casey 161. A decree in equity is equal to a judgment: Le Barron *v.* Le Barron, 2 Am. Law Reg. 212; Garth *v.* Ward,

2 Atk. 175; Walker *v.* Smallwood, Amb. 676; Bishop of Winchester *v.* Beavor, 3 Vesey 316.

The opinion of the court was delivered, March 23d 1871, by

SHARSWOOD, J.—At common law, following the original feudal principle, land could not be taken to pay the debts of the owner, and hence judgments were not liens. "At common law" says Mr. Price, in his valuable treatise on Limitation and Liens, "a judgment was not a lien upon lands, but the lien resulted in England from lands being subjected by statute to be taken in execution; and from this right the land was held bound from the date of the judgment. The first of these, the 13 Edw. 1, *de mercatoribus*, subjected to liability the lands of the debtor into whose hands soever they came after the statute acknowledged; and by 13 Edw. 1, ch. 18, the *elegit* was given, by which writ the sheriff delivered to the plaintiff one-half of the debtor's land until the debt should be levied: 3 Bac. Abr. *Execution* A. And when our ancestors subjected all the debtor's lands to execution for debt, this lien of the judgment was held to bind all the debtor's lands:" Price on Lim. 276; Reed's Appeal, 1 Harris 479.

To consider then the order of the court below of February 12th 1866, as a lien upon the land of James Ruddy, we must have the authority of some statute.

No doubt the Court of Common Pleas, in which was pending the proceeding instituted by the wife for a divorce, had power to make such an order and to enforce it by attachment. It is a necessary incident to the jurisdiction to decree a divorce. So all the interlocutory orders as well for the payment of costs and expenses as of *interim* maintenance pending the libel, have been regarded as well in the ecclesiastical courts in England as in common law courts specially vested with the jurisdiction in this country: Melizet *v.* Melizet, 1 Parsons' Sel. Cas. 78; Graves *v.* Cole, 7 Harris 173; Breinig *v.* Breinig, 2 Casey 161. It certainly, however, is not a judgment upon which an execution could issue, and it has not been pretended that there is any statute which expressly confers upon it the privilege of a lien. The Act of Assembly of April 15th 1845, Pamph. L. 455, gives the incidents of lien and execution to the allowance of alimony made upon a decree of divorce *a mensâ et thoro*, but no possible construction can extend its provisions so as to embrace any interlocutory order the court may make. It is probable, however, that the court below considered that the act entitled, "An Act to make decrees for the payment of money in equity proceedings liens upon real estate, with the right to revive or continue the liens of the same by writ of scire facias," passed March 29th 1859, Pamph. L. 289, reached the case. But the order now in

[Groves's Appeal.]

question cannot, we think, be construed to be "a decree in equity for the payment of money." That act is confined to decrees in equity—or as they are termed in the title, in equity proceedings —in the proper technical sense; and this is manifest from the language used that the lien shall be "with the same force and effect as the lien of judgments rendered by and in the common-law courts of this Commonwealth." Decrees by courts in equity, are put on the same footing as judgments in the common-law courts. The construction which would extend these words further would comprehend every order made by a court of common law for the payment of money in the exercise of its original functions, or those superadded by statute; as for example on an attorney to pay over money to his client, or upon its own officer to pay money in court to a suitor. The legislature have not so said and did not so intend.

It follows, that the first assignment of error is sustained; and this renders the consideration of the other unnecessary.

> Decree reversed, and now it is ordered and decreed that the distribution as first reported by the auditor below, October 26th 1868, be and the same is hereby confirmed, and directed to be made accordingly.