# Smith v. Smith

534

C.P. of Lebanon County, No. 2013-20491

*M. Jannifer Weiss*, for plaintiff.
*Christopher C. Smith*, pro se defendant.

CHARLES, *J.*, Dec. 19, 2014—1. Alimony pendente lite began as a precept of Pennsylvania Common Law, not then discharged his lawyer and filed a as a matter of right. It was addressed to the sound discretion of the court, and the court could refuse it where cause against it was shown. The controlling element in granting an allowance was the wife's necessity for it, the husband's ability to pay and all the circumstances of the particular case. The destitute condition of the wife was a necessary prerequisite to an order for alimony pendent lite. Her want of pecuniary

ability had to be shown affirmatively before an order was made. Further, the husband's ability to pay had to be shown and not presumed, and if the husband's means were limited, the amount allowed was necessarily limited.

2. Section 3702 of the divorce code states that in proper cases, upon petition, the court may allow a spouse reasonable alimony pendente lite. The definitional section of the divorce code defines alimony pendente lite as an order for temporary support granted to a spouse during the pendency of a divorce or annulment proceeding. However, the divorce code does not specify when or in what amount alimony pendente lite should be awarded.

3. Until the advent of Pennsylvania's Support Guidelines, alimony pendente lite was determined at the discretion of trial courts on a case-by-case basis.

4. Pennsylvania adopted child support guidelines in 1981. These guidelines were expanded to include alimony pendente lite in 1994. Rule 1920.31 requires that alimony pendente lite ordered by a court must be paid through the local domestic relations office.

5. Rule 1910.16(c) provides that alimony pendente lite and spousal support cannot be enforced simultaneously. Rule 1910.16-1(c) requires a court to consider the duration of the marriage in determining alimony pendente lite. Rule 1910.16-1(b) states that the amount of support (child support, spousal support or alimony pendente lite) to be awarded shall be determined in accordance with the support guidelines.

6. In spite of these new alimony pendente lite rules — or perhaps because of them — the official comment to the support guidelines was amended to state that nothing in this Rule should be interpreted to eliminate the distinctions between spousal support and alimony pendente lite which were established by case law.

7. Our appellate courts have always recognized that alimony pendente lite and spousal support differ in character. Spousal support has always been predicated upon the existence of a marital relationship and is designed to enable a dependent spouse to pay all of his/her necessary expenses. In contrast, alimony pendente lite has historically been designed to enable a dependent spouse to prosecute or defend a divorce proceeding.

8. The court here placed significant emphasis on the official comment added to the support guidelines at the time the alimony pendente lite provisions were added to the guidelines. This official comment states that nothing in this Rule should be interpreted to eliminate the distinctions between spousal support and alimony pendente lite which are established by case law.

9. Based upon its analysis of the case law, and upon the court's belief that a distinction between alimony pendente lite and spousal support continues to exist in a post-guideline environment, it concluded that a plaintiff seeking alimony pendente lite must establish some financial need in order to obtain alimony pendente lite. However, the court stated that it was not necessarily

declaring that the bar establishing financial need must be high or that financial need can be automatically presumed simply because one spouse earns more than another. However, the court also noted that financial need cannot necessarily be foreclosed simply because the spouse with the lower income cuts back expenses in order to make his/her ends meet.

10. The standard of living developed by the parties during the marriage, the degree to which either spouse has independent assets available, the extent to which either party receives help in paying expenses, and the nature of the income discrepancy between the parties are all factors that can and must be considered in assessing financial need. In short, a determination of financial need is of necessity a moving target that must be evaluated based upon the unique facts and circumstances of each particular case.

11. Once a threshold determination of financial need is made, then the support guideline calculations must be undertaken under Pa.R.C.P. 1910.16-1(b), the rule used to determine spousal support. This formula necessarily considers the incomes of each party and whether any child support is also owed.

12. Applying the spousal support formula to an alimony pendente lite case does not totally end the analysis. The Pennsylvania Supreme Court addressed a support guideline question by concluding that where the incomes of the parties differ significantly, it believed that it is an abuse

of discretion for the trial court to fail to consider whether deviating from the support guidelines is appropriate. Rule 1910.16-5(b) of the guidelines sets forth numerous factors that a court must consider in determining whether to deviate from the guideline formula amount.

13. Sifting through everything outlined above, the court held that the following analytical paradigm must be employed whenever a spouse seeks alimony pendente lite. Is a divorce action pending? Because alimony pendente lite is ancillary to divorce, no award can be ordered in the absence of a pending divorce action. Does the dependent spouse have a financial need for alimony pendente lite? The question of financial need must of necessity be fact-specific and based upon the exigencies of each unique case. What do the spousal support guidelines require based upon the income of both parties? Is a deviation from the spousal support guideline amount appropriate based upon the facts set forth in Pa.R.C.P. 1910.16-5(b)?

14. The court agreed with the special master that wife had established financial need for alimony pendente lite and that she had a need for additional finances in order to raise her lifestyle to a level closer to what she enjoyed pre-separation. Therefore, the court applied the rules governing the Pennsylvania Support Guidelines to this case.

15. Since neither Husband nor wife had challenged the special master's determination of income or her calculation of alimony pendente lite using the spousal support guidelines, the court adopted the calculation of

the domestic relations officer that the guidelines require that husband pay $1,178.00 per month to wife and issued an order to accomplish this.

16. In absence of testimony and evidence from husband relative to his financial situation, the court was unable to deviate from the formula calculation of alimony pendente lite required by the Pennsylvania Spousal Support Guidelines. Accordingly, no deviation from the guidelines was directed.

This case focuses upon the interplay between financial need and Alimony Pendente Lite (APL). Susan Smith (hereafter "wife") argues that proof of financial need is no longer a predicate to an award of APL. In contrast, Christopher Smith (hereafter "husband") argues that a threshold showing of financial need is necessary before any APL can be awarded. Our research has revealed legal precedent that supports the arguments proffered by both sides. However, because we conclude that APL cannot statutorily or historically be equated with spousal support, and because we therefore conclude that something other than the marital relationship is needed to support APL, we hold today that a spouse seeking APL must establish at least some threshold proof of financial need. However, we also hold that the definition of "financial need" must of necessity be fluid and determined based upon the unique circumstances presented by each factual dispute. As we will outline in more detail below, we hold in this case that wife has in fact established that she has a need for APL,

and we will therefore affirm the decision of the special master to require that husband pay APL to wife.

## I. FACTS

Husband and wife were married on September 15, 1984. The relationship obviously had its ups and downs. Even before separation, wife filed a complaint for divorce on June 25, 2013. Included in wife's complaint was a request for APL. However, wife did not pursue her claim for APL until June of 2014. At that time, wife left the marital residence to move into an apartment. (Special master report at pg. 2). Attorney Loreen Burkett was appointed as special master to hear only wife's claim for APL.

A hearing regarding APL was conducted before the special master on August 26, 2014. At that hearing, both parties described a pre-separation lifestyle that could be classified as upper middle class. Moreover, both parties were able to pay the cost of their son's college education. Wife aptly said that after college education was paid: "I did not have any worries financially." (N.T. 14).

The parties' relatively good lifestyle was based upon the fact that each has enjoyed a relatively good job. Husband has been employed by the Pennsylvania Higher Education Assistance Agency. Although husband did not provide 2014 income information, wife produced a 2013 W-2 wage statement that revealed wages of $105,207.09 and a 2012 W-2 that reflected earnings of $102,172.33.[1]

---

1. In addition, the 2013 income tax return of the parties revealed capital gains of $82,901.00 during that calendar year. The special master

Therefore, she evaluated husband's 2013 annual income and calculated husband's monthly income at $8,750.00. Wife has been employed as an office manager at Vision Works, Inc. She is salaried at $46,000.00 per year. However, she also receives bonuses. Wife did produce evidence of her income during 2014. Based upon wife's 2014 income documentation, the special master determined her gross monthly income to be $4,429.16.

Following separation, husband remained in the martial home. Wife obtained an apartment at the Rockledge Apartment Complex near Palmyra. She testified that her standard of living has declined since separation. (N.T. 15). She specifically testified that she has cut back on expenses and can no longer afford a vacation or new clothing. She summarized her situation by stating: "I do not buy anything that I do not need." (N.T. 16). Moreover, she furnished her apartment by purchasing used items at a local thrift store. (N.T. 17-18). On cross examination, wife explained that while she is able to pay her bills, her expenses are now based upon a lifestyle that is "substantially cut down" from that which she enjoyed during the marriage. (N.T. 38).

Stunningly, husband declined to testify or present documentary evidence at the APL hearing. Instead, he rested upon his cross-examination of wife and his argument that she had no need for APL. Specifically, husband argued

---

determined that capital gains "can properly be considered as part of the marital estate for distribution purposes when the estate is later divided."

that wife possessed $35,000.00 in a checking and savings account and that she should be required to draw down those amounts before collecting APL. Husband focuses on wife's current expenses and argues: "She has the ability to afford all of her living expenses since moving out of the former marital residence..." (Husband's Brief at 6).

Without conducting any extensive legal analysis, the special master accepted husband's premise that wife was required to prove financial need. However, the special master determined that wife did have financial need for APL. The special master stated:

> Husband argues that, even though his income may be substantially higher than wife's, she has not demonstrated an actual need for an award of alimony pendente lite. He indicates that wife has been able to meet all of her living expenses since moving out and has been able to pay her legal fees. However, wife testified that she has only been out of the marital residence for two months and has taken measures to cut back on expenditures, not knowing what her actual income will be. She stated that the parties are only at the beginning of their legal expenses and they are estimated, and that she will incur more as time goes on. Wife indicated she does not have access to many of the marital funds. Wife has demonstrated actual need for an award of alimony pendente lite.

(Special Master's Report at 3).

Based upon the foregoing, the special master awarded

APL to wife based entirely upon the Pennsylvania Spousal Support Guidelines. The calculations employed by the special master are set forth below:

Wife Husband

Total gross income per month $4,429 $8,750

Less Deductions $1,071 2,446

Net Income $3,358 $6,304

Difference $2,946

Percent by which to multiply 40

Amount of Monthly Alimony Pendente Lite Obligation $1,178

Husband filed timely exceptions to the decision of the special master. The primary focus of husband's exceptions was that wife has not established need for APL. Husband argued: "The learned master erred and/ or committed an abuse of discretion by adhering to the spousal support guidelines in determining an award of APL, as the resulting sum is far more than wife needs to maintain herself throughout the divorce proceedings." Secondarily, husband also challenged the special master's decision that he should be required to pay a portion of wife's unreimbursed medical expenses.

Following the filing of exceptions, husband asked this court to stay his payment of APL during the pendency of the underlying substantive exceptions. By a court order

dated October 16, 2014, we denied husband's request to stay payment of APL. Husband then discharged his lawyer and filed a *pro se* response by which he reiterated his argument that wife should not receive anything because she has no financial need.

As we began our evaluation of husband's exceptions to APL, we quickly realized the underlying legal precepts governing APL are more complicated than the parties had realized or we had anticipated. We will therefore begin our analysis by outlining the history of APL in Pennsylvania and how it has evolved to closely — but not completely — parallel spousal support. After analyzing the law, we will apply the facts of this case in order to reach our decision.

## II. DISCUSSION

### A. Legal Analysis

APL began as a precept of Pennsylvania common law. *See,* Appeal of Groves, 1871 WL11028, 68 Pa. 143 (1871). Its historical purpose was summarized in *Purman v. Purman,* 7 Pa. D & C 755 (1925):

> Alimony pendente lite is not a matter of right, but it is addressed at the sound discretion of the court, and the court may refuse it where cause against it is shown.

> The controlling element in granting an allowance in any case is the wife's necessity for it, the husband's ability to pay and all the circumstances of the particular case.

The destitute condition of the wife is a necessary prerequisite to an order for alimony pendente lite. Her want of pecuniary ability must be shown affirmatively before an order will be made.

The husband's ability to pay must be shown and not presumed, and if the husband's means are limited, the amount allowed will necessarily be limited.

*Id.* at 758. In 1929, the right to APL was codified by statute. *See*, 23 P.S. 46 (May 2, 1929) (repealed). However, the amount of APL was always considered to be "a matter of judicial discretion." *Meinel v. Meinel*, 167 A. 385 (Pa. Super. 1933).

When Pennsylvania's Divorce Code was created in 1990, APL was incorporated. Section 3702 of the Divorce Code States: "In proper cases, upon petition, the court may allow a spouse reasonable alimony pendente lite..." 23 Pa.C.S.A. § 3702. The definitional section of the divorce code defines APL as "An order for temporary support granted to a spouse during the pendency of a divorce or annulment proceeding." 23 Pa.C.S.A. § 3103. However, the divorce code does not specify when or in what amount APL should be awarded.

Until the advent of Pennsylvania's Support Guidelines, APL was determined at the discretion of trial courts on a case-by-case basis. From a broad perspective, our appellate courts recognized a distinct difference between spousal support and APL: the former arose out of the marital relationship itself and was designed to provide financial

maintenance and support for the dependent spouse, while the latter was considered ancillary to a divorce action and was intended to equalize the ability of each spouse to prosecute or defend the divorce action. *Remick v. Remick*, 456 A.2d 163 (Pa. Super. 1983). The amount of APL was determined based upon factors identical to those contained in the divorce code regarding alimony. *See, e.g. Dyer v. Dyer*, 536 A.2d 453 (Pa. Super. 1988) and *McNulty v. McNulty*, 500 A.2d 876 (Pa. Super. 1985). *See also*, 23 Pa.C.S.A. § 3701(b) (repealed).

Pennsylvania adopted child support guidelines in 1981. These guidelines were expanded to include APL in 1994. The following provisions of the Support Guidelines now address APL:

Rule 1920.31 requires that APL ordered by a court must be paid through the local domestic relations office.

Rule 1910.16-1(c) provides that APL and spousal support cannot be enforced simultaneously.

Rule 1910.16-1(c) requires a court to consider the duration of the marriage in determining APL.

Rule 1910.16-1(b) states: "The amount of support (child support, spousal support or alimony pendente lite) to be awarded...shall be determined in accordance with the support guidelines..."

In spite of these new APL rules — or perhaps because of them — the official comment to the support guidelines

was amended to state: "Nothing in this Rule should be interpreted to eliminate the distinctions between spousal support and alimony pendente lite which are established by case law." Pa.R.C.P. 1910.1 (explanatory comment — March 30, 1994).

Since 1994, mixed messages have been articulated by courts which were called to rule upon APL issues. In *Calibeo v. Calibeo*, 663 A.2d 184 (Pa. Super. 1995), the Pennsylvania Superior Court acknowledged the APL changes created by the support guidelines and stated: "Since [the support guideline amendment] requires that alimony pendente lite be determined pursuant to the support guidelines, the difference between alimony pendente lite and spousal support, no matter if it is part of the divorce action or filed separately, is negligible..." *Id.* at 185. Moreover, our Supreme Court has applied the support guidelines and directed that finders of fact "calculate a spousal support or APL award according to the formula set forth in Rule 1910.16-4..." *Mascaro v. Mascaro*, 803 A.2d 1186, 1191 (Pa. 2002).

On the other hand, several Pennsylvania Superior Court cases have implied that financial need is a precondition of awarding APL. In *Schenk v. Schenk*, 880 A.2d 633 (Pa. Super. 2005), a trial court refused to adhere to the support guidelines because an obligee-wife lived with a boyfriend "who paid all of her bills." In affirming the trial court's decision, the Superior Court stated:

As for the court's holding that wife is not entitled to

APL for the time when she lived with boyfriend, we find no abuse of discretion. First, we note our agreement with husband that the court's rationale in denying wife APL for the time she lived with her boyfriend appears not to be based simply upon her cohabitation, but rather upon her failure to prove her needs in defending herself in the divorce action...Alimony pendente lite is designed to be temporary and is available to those who demonstrate the need for maintenance and professional services during the pendency of the proceedings. Wife failed to demonstrate her need. Accordingly, we find no abuse of the court's discretion.

*Id.* at 646, quoting in part *Jayne v. Jayne*, 663 A.2d 169, 176 (Pa. Super. 1995). *See also Childress v. Bogosian*, 12 A.3d 448 (Pa. Super. 2011) ("APL focuses upon the ability of the individual who receives the APL during the course of the litigation to defend her/himself, and the only issue is whether the amount is reasonable for the purpose..." *Id.* at 463).

Several common pleas decisions have evaluated the question of whether a financial need litmus test should be imposed as a predicate to an award of APL. Two courts reached the conclusion that it should not. In *Frerotte v. Frerotte*, 74 Pa. D & C 4th 298 (Fayette Co. 2005), the court held that a deviation from the guidelines in an APL case cannot occur unless the court makes a determination that the guidelines themselves would permit deviation. Even more explicit is an en banc decision by the Lehigh

County Court in *Prud'homme v. Prud'homme*, 48 Pa. D & C 4th 182 (2000). In setting forth a comprehensive history of Pennsylvania law pertaining to spousal support and APL, the court recognized that even under common law principles, both APL and child support "required the court to determine the recipient's needs based on the parties' standard of living while they lived together or their station in life, and the payor's ability to pay considering his/her income, property and earning capacity." The court stated:

[S]pousal support and APL were always based on similar financial criteria, though the procedures and duration differed. As a result of the promulgation of new support rules by the Pennsylvania Supreme Court, and the interpretation of these rules by the Pennsylvania Supreme Court and the Pennsylvania Superior Court, many of the historical distinctions between spousal support and APL have been eliminated. APL like spousal support shall be determined in accordance with the uniform support guidelines. APL and spousal support shall not be in effect simultaneously. APL claimants, like spousal support claimants, need not prepare and file detailed income and expense statements. Upon the entry of a decree in divorce, if economic claims are still pending, a spousal support order shall be deemed an order for APL.

*Id.* at 192. Essentially, the *Prud'homme* court determined that "APL is merely a type of support awarded in divorce cases." *Id.* at 191. Having reached this conclusion, the

court in *Prud'homme* rejected the obligor's effort to create a financial need litmus test. The court stated:

> Husband's argument is contrary to both the letter and spirit of the uniform support guidelines. First, from a linguistic standpoint, Rule 1910.16-1 states very specifically that APL, like spousal support and child support, is to be determined in accordance with the guidelines. If the guidelines establish APL... and there is no basis for a deviation, then APL is to be awarded in that amount, so long as there is a divorce action being pursued. There is no requirement under the support rules for a separate demonstration of financial need... Husband's contention, if adopted, would return us to the pre-guideline days when subjective judgments were made as to "need." This would reintroduce uncertainty into a process that is intended to be uniform and predictable.

*Id.* at 193, 194.

In contrast to *Frerotte and Prud'homme*, the Somerset County Court of Common Pleas determined that a preliminary finding of financial need must be established before the spousal support guidelines are applied. *Moore v. Moore*, 56 Som.L.J. 110 (1999). The court in *Moore* emphasized that APL was founded on a different historical precept than was spousal support. Because APL was intended from the beginning to enable a spouse to prosecute or defend a divorce action, a finding of need by the obligee spouse necessary follows in order to

accomplish the purpose of APL.

To date, Pennsylvania's highest court has not yet had the opportunity to rule upon the question of whether financial need is a predicate to recovering APL. Moreover, we are aware of no Superior Court precedent that has either specifically mandated or rejected a request to employ the "financial need" litmus test prior to awarding APL.[2]

We were particularly impressed with the scholarly approach undertaken by the Lehigh County Court on the precise issue that is now before us. Nevertheless, we depart company with our colleagues in Lehigh County. As we read *Prud'homme*, we perceive that the Lehigh County Court has essentially equated APL with spousal support except in the very unusual situation where separated spouses are involved in litigation that does not include divorce proceedings. We simply cannot concur that our Supreme Court intended to transform APL into "merely a type of support awarded in divorce cases."

Our appellate courts have always recognized that APL and spousal support "differ in character." *Belshy v. Belshy*, 175 A.2d 348 (Pa. Super. 1962); *Hanson v. Hanson*, 110 A.2d 750 (Pa. Super. 1955); *Commonwealth ex rel Lipschultz v. Lipschultz*, 117 A.2d 793 (Pa. Super. 1955). Spousal support has always been predicated upon

---

2. *Schenk* was affirmed by the Superior Court on two separate grounds. In addition to declaring that the wife had not established financial need, *Schenk* also recognized that the support guidelines themselves required a deviation because wife possessed "other income in her household" and this is a factor that the court must consider when determining whether to deviate from the support guidelines.

the existence of a marital relationship and is designed to enable a dependent spouse to pay all of his/her necessary expenses. *See, e.g. Commonwealth ex rel Werline v. Werline*, 421 A.2d 1080 (Pa. Super. 1980). In contrast, alimony pendente lite has historically been designed to enable a dependent spouse to prosecute or defend a divorce proceeding. *Price v. Price*, 614 A.2d 1386 (Pa. Super. 1992).[3] To our knowledge, no statute, rule of court or appellate decision has ever equated APL and spousal support as did *Prud'homme*.

We place significant emphasis on the official comment to the support guidelines amendments that incorporated APL. That comment states: *"Nothing in this Rule should be interpreted to eliminate the distinctions between spousal support and alimony pendente lite which are established by case law."* Why would this language have been included if the Supreme Court intended to morph APL into "mere spousal support in a divorce case?"

Based upon the analysis of *Schenk v. Schenk, supra*, and upon our belief that a distinction between APL and spousal support continues to exist in a post-guideline environment, we conclude today that a plaintiff seeking APL must establish some financial need in order to obtain APL. However, we do not necessarily declare that the bar

---

3. There are other differences as well. For example, a spouse may receive APL even when his/her martial misconduct would have barred an award of spousal support. *Wargo v. Wargo*, 154 A.2d 339 (Pa. Super. 1959). Also, spousal support is of indefinite duration, while APL is limited in duration to the time that a proceeding "may with due diligence be prosecuted to conclusion. *Belshy v. Belshy, supra.*

establishing financial need must be high. Financial need cannot be automatically presumed simply because one spouse earns more than another. However, financial need cannot be always foreclosed simply because a spouse with lower income cuts back expenses in order to make his/her ends meet. The standard of living developed by the parties during the marriage, the degree to which either spouse has independent assets available, the extent to which either party receives help in paying expenses, and the nature of the income discrepancy between the parties are all factors that can and must be considered in assessing financial need. In short, a determination of financial need is of necessity a moving target that must be evaluated based upon the unique facts and circumstances of each particular case.

Once a threshold determination of financial need is made, then the support guideline calculations must be undertaken. Under Pa.R.C.P. 1910.16-1(b), a formula identical to spousal support must be employed. This formula necessarily considers the incomes of each party and whether any child support is also owed.

Applying the spousal support formula to an APL case does not totally end the analysis. In *Colonna v. Colonna*, 855 A.2d 648 (Pa. 2004), the Pennsylvania Supreme Court addressed a support guideline question by concluding: "[W]here the incomes of the parties differ significantly, we believe that it is an abuse of discretion for the trial court to fail to consider whether deviating from the support

guidelines is appropriate..." *Id.* at 652. Rule 1910.16-5(b) of the guidelines sets forth numerous factors that a court must consider in determining whether to deviate from the guideline formula amount. Those factors are:

(1) Unusual needs and unusual fixed obligations.

(2) The support obligations of the parties.

(3) Other income in the household.

(4) Ages of children.

(5) Assets of parties.

(6) Medical expenses not covered by insurance.

(7) Standard of living of the parties.

(8) In an APL case, the duration of the marriage during which the parties resided together.

(9) Any other appropriate factors.[4]

Sifting through everything outlined above, we hold today that the following analytical paradigm must be employed whenever a spouse seeks APL:

(1) Is a divorce action pending? Because APL is ancillary to divorce, no award can be ordered in the absence of a pending divorce action.

---

4. In a case involving APL, we believe that an appropriate "other factor" would be whether the assets possessed by the parties will later be attached or divided during equitable distribution. After all, we question the fairness of granting or denying APL because one spouse may temporarily possess an asset that will later be divided between both.

(2) Does the dependent spouse have a financial need for APL? The question of financial need must of necessity be fact-specific and based upon the exigencies of each unique case.

(3) What do the spousal support guidelines require based upon the income of both parties?

(4) Is a deviation from the spousal support guideline amount appropriate based upon the factors set forth in Pa.R.C.P. 1910.16-5(b)?

It is the above analytical paradigm that we will apply to the facts of this case.

B. Factual Analysis

(1) Pending Divorce Action

Wife filed a divorce complaint on June 25, 2013. That divorce complaint was never withdrawn. Litigation regarding the parties' divorce is now pending. Thus, APL is a remedy available to wife under the Pennsylvania Divorce Code.

(2) Financial Need

Stripped of superfluity, husband posits the following argument: "Wife is able to pay her current expenses with her income. Therefore, she has no financial need." We categorically reject this simplistic argument. A determination of financial need must of necessity analyze far more than whether an obligee spouse has unpaid bills and expenses.

Husband earns almost double the income of wife. In terms of dollars and cents, husband takes home almost $3,000.00 per month in net income more than does wife. This is a significant income discrepancy that cannot be ignored.

During the marriage, the parties enjoyed an upper middle class lifestyle. It is certainly true that when two spouses separate, neither will be able to enjoy the same lifestyle separately that both were able to enjoy together. Still, a spouse who earns less than her husband should not be expected to endure a standard of living that is degraded considerably below what was previously enjoyed during the marriage. In this case, wife has had to "start over" in an apartment. She testified that she has been forced to purchase furniture and other items from a thrift store in order to set up her household. She is no longer able to eat out or enjoy recreational activities as she did prior to separation. In short, wife has a need for additional finances in order to raise her lifestyle to a level closer to what she enjoyed pre-separation.

Just as important, we are not blind to the fact that when pursuing or defending litigation, money and financial resources can equal leverage — and we are talking about much more than simply being able to afford lawyers' fees and costs. When a litigant is in a precarious financial situation and is living paycheck-to-paycheck, there is a huge temptation/incentive for that party to settle promptly. Knowledge of this fact affords the opposing party with

a negotiating advantage that can be critical. On the other hand, when both parties can enter litigation on a relatively equal financial playing field, neither has an unfair advantage over the other. In this case, the fact that husband earns far more than wife places him in a vastly superior economic position. *See, e.g. DeMasi v.DeMasi*, 597 A.2d 101 (Pa. Super. 1991) (assets and income are the "financial sinews of domestic warfare." *Id.* at 104). Independent of anything else, this type of vastly superior economic position is precisely why APL was developed at common law and by statute.

As noted above, the bar to establishing financial need has never been impossible or even difficult to hurdle. *See, Kuehnle v. Kuehnle*, 157 A.2d 218 (Pa. Super. 1931) ("It is not necessary that [wife] be financially destitute before an [APL] order is made." *Id.* at 219). While we would be reluctant to award APL simply because one spouse earns only percentage points less than the other, neither are we blind to the day-to-day and litigation advantages that $3,000.00 per month can afford to a party. In this case, we agree with the special master that wife has established financial need for APL. Therefore, we will move forward to apply the rules governing the Pennsylvania Support Guidelines.

(3) Guidelines Support Amount

The special master determined that the support guidelines result in an award of APL totaling $1,178.00 per month. Neither husband nor wife have challenged

the special master's determination of income or her calculation of APL using the spousal support guidelines. Accordingly, we will adopt the calculation of the DRM that the guidelines require that husband pay $1,178.00 per month to wife.

(4) Deviation

The special master did not consider deviation from the support guidelines as a possibility, nor did she analyze or discuss any of the support deviation factors. Because we believe that analysis of APL should generally at least contemplate the possibility of deviation, we would prefer to undertake a deviation analysis. Unfortunately, we are significantly hindered in our ability to do so by virtue of the fact that husband choose not to testify at the APL hearing.

In a *pro se* document filed on October 29, 2014, husband asserted that his monthly expenses greatly exceeds his income and "I can no longer afford to be represented and maintain any type of a lifestyle I am accustomed to." Unfortunately, we cannot consider husband's post-hearing protestations of poverty. Husband was afforded the opportunity to provide testimony and documentation at the APL hearing that occurred on August 26, 2014. For whatever misguided reason, husband voluntarily chose not to present anything. As a practical matter, we are unable to undertake a meaningful deviation analysis as a result.[5]

---

5. We are well aware that husband has retained possession of the marital home. We suspect that expenses relating to the marital home

In absence of testimony and evidence from husband relative to his financial situation, we are unable to deviate from the formula calculation of APL required by the Pennsylvania Spousal Support Guidelines. Accordingly, no deviation from the guidelines will be directed.

## III. CONCLUSION

On the initial legal question of whether financial need is a prerequisite to an award of APL, we agree with husband that some showing of financial need is a predicate to an award of APL. However, we categorically reject husband's position that myopically focuses upon whether wife has unpaid expenses. Evaluating financial need requires a global assessment of both spouses' income, expenses, assets and standard of living. APL has always been intended to prevent one spouse from gaining financial leverage over the other during the pendency of a divorce proceeding, and financial need must be assessed with this purpose in mind.

In this case, there is a huge disparity of income between husband and wife. Moreover, wife has established to our satisfaction that her current financial situation is tenuous, and that her standard of living has diminished significantly since separation. We conclude that absent APL, husband would be in a far better position to litigate the parties'

---

could well exceed the $765.00 per month that wife spends in rent for her apartment. (*See* Exh. 2). This is certainly a factor that we would have considered when determining whether to deviate from the guidelines. Unfortunately, we cannot consider this or any other aspect of husband's financial condition because he stubbornly refused to provide information regarding that condition.

divorce than would wife. Accordingly, we agree with the special master that wife has established financial need.

Because we conclude that wife has established financial need, we agree with the special master's decision to apply the spousal support formula set forth in the support guidelines. Although we would have preferred to undertake a deviation analysis under Pa.R.C.P. 1910.16-5(b), we were essentially prevented from doing so by virtue of husband's decision not to testify or provide documentary evidence. Accordingly, we will adopt the special master's guideline formula calculation and will affirm her decision to award wife $1,178.00 per month in APL. An Order to accomplish this will be entered today's date.

### ORDER OF COURT

And now, to wit, this 19th day of December, 2014, upon consideration of the exceptions filed by Christopher C. Smith, and in accordance with the opinion that is attached, it is ordered and eecreed that Christopher C. Smith's exceptions are denied and the recommendation of the special master is affirmed as follows:

1. Alimony pendente lite is hereby awarded effective June 11, 2014, and shall be paid by Christopher C. Smith to Susan C. Smith as follows:

(a) $1,178.00 per month until a final degree in divorce is entered in this matter.

(b) Uncovered medical expenses, after the first $250.00 per year, incurred by Susan C. Smith shall be paid 65%

by Christopher C. Smith and 35% by Susan C. Smith.

(c) Arrears shall be paid monthly by Christopher C. Smith to Susan C. Smith until the arrearages are paid in full at the rate of $117.80 per month.

(d) This order shall be forwarded to the domestic relations office to be paid through domestic relations by way of wage attachment.