J-S32042-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| STEPHEN M. PICKHAVER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CRYSTAL ROSE MORROW | : | |
| PICKHAVER | : | |
| | : | No. 730 EDA 2024 |
| Appellant | | |

Appeal from the Decree Entered February 28, 2024
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  CV-2019-007838

BEFORE:  LAZARUS, P.J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED DECEMBER 6, 2024**

Appellant, Crystal Rose Morrow Pickhaver ("Wife"), appeals from the decree entered in the Delaware County Court of Common Pleas, which finalized the divorce between Wife and Appellee, Stephen M. Pickhaver ("Husband") and completed the equitable distribution of the marital property. We affirm.

The relevant facts and procedural history of this case are as follows. Husband and Wife married on June 24, 2017.  The parties separated on June 21, 2019, when Wife filed a protection from abuse action.  Husband filed a complaint in divorce on September 19, 2019.  The court conducted equitable distribution hearings on March 7, 2023 and April 26, 2023.  The court issued a final equitable distribution order on August 31, 2023 (docketed September 7, 2023).  In the order, the court considered the factors set forth in 23

Pa.C.S.A. § 3502(a) for equitable distribution and made the following findings of fact.

**(1)     The length of the marriage.**

This factor favors neither party.

Prior to the date of separation [the] parties were married for approximately two years.

**(2)     Any prior marriage of either party.**

This factor favors neither party.

Both parties were married previously.

**(3)     The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.**

This factor favors neither party.

Both parties are in their fifties and have the ability to earn income from their respective professions to support themselves, as they did before they met each other.

Husband was diagnosed and treated for colon cancer subsequent to separation and underwent surgery and chemotherapy beginning in early 2021. Although he testified as to the physical stresses of being a roofer there was no vocational evidence presented.

Wife claims to have medical issues affecting her ability to work however all reductions in hours have been voluntary and not physician ordered. Wife also lives with a paramour who appears to contribute significantly to her expenses. There is no evidence to suggest that Wife's standard of living has changed or will change in the future.

**(4)     The contribution by one party to the education, training or increased earning power of the other party**.

This factor is not applicable. Both parties were established in their respective careers prior to marriage. Wife claimed to have assisted Husband in a limited capacity during approximately a one week period wherein he was ill from dental surgery, however that had no bearing on this factor.

**(5)     The opportunity of each party for future acquisitions of capital assets and income.**

This factor favors both parties.

Both parties have the opportunity to have income and acquire assets in the future.

**(6)     The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.**

This factor favors both parties.

Husband is a self-employed roofer and Wife is a hairdresser, and both can continue to earn income from their professions. Neither party has a retirement account or other benefits.

Wife did not provide tax returns for 2019 or 2020 and admitted to now voluntarily working a less than full time schedule. This [c]ourt finds Husband's testimony and tax returns credible and acknowledges that although the profits may have been in excess of six-figures both before and during the brief marriage, that his business deductions and other tax related constructs could credibly reduce that profit to the income as shown on his multiple tax returns. Therefore, Wife's claims that Husband had income in excess of $100,000 during the marriage are without merit.

Wife testified that before and during the marriage she spent extremely large sums of her own money on home renovation and saving for a new home, thus supporting even further this [c]ourt's finding that her income has been grossly under assessed. Regardless, both parties had access to large amounts of cash and this [c]ourt finds that Wife maintained her access to her cash flow after the marriage ended, but again, there is simply no evidence to

show how much her income was for the two years in question.

Although it appears from the documents that Husband may earn slightly more than Wife, both parties have sufficient current and future income.

**(7)    The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.**

This factor favors neither party.

During the marriage, Husband paid almost all of the parties' living expenses (mortgage, utilities, car payment, etc.) from his income. Wife contributed toward food and some utilities.

This [c]ourt did not find Wife credible in her evidence regarding the $100,000 in cash allegedly retained by Husband at or around the date of separation. As previously stated, the parties' lifestyle was to avoid banks and to keep large amounts of cash in their home and the photos produced did not conclusively establish that the cash shown belonged to the parties or to Husband individually, as all of the money could very well have been cash tip income received and unreported by Wife or cash that Husband gave to her as a gift, or cash completely unrelated to Husband. There was no credible evidence that the cash shown in the photos existed as of the date of separation or that it was ever in Husband's possession. As such, this [c]ourt did not consider this alleged cash as evidence of Husband's income or assets and did not attach any weight to this evidence.

**(8)    The value of the property set apart to each party.**

This factor favors neither party.

The only asset actually purchased during the marriage was the Lincoln automobile for which Husband used Wife's vehicle for trade-in value. Although Wife has had exclusive possession of this automobile since separation, Husband has paid all related expenses including car loan and insurance.

Husband has some equity in the pre-marital home that he owns with his [m]other.

**(9)     The standard of living of the parties established during the marriage.**

This factor favors both parties.

The parties lived a comfortable lifestyle during their brief marriage, albeit rather "fancy free" and slightly beyond their joint means, there was no credible evidence that the income to both parties was totally reported in their tax returns. Both parties kept large amounts of cash in the home, failed to report cash income and regularly withdrew large sums from their individual bank accounts. Wife testified that before and during the marriage she spent extremely large sums of her own money on home renovation and both parties testified that they relied largely on cash and expendable income to save for a new home. Regardless, both parties had access to large amounts of cash which they spent to mutually enjoy their life together.

**(10)     The economic circumstances of each party at the time the division of property is to become effective.**

This factor favors both parties, as both have the ability to earn income and support themselves, even though Wife is receiving substantial support [from] her current paramour and Husband is receiving mortgage assistance from his mother.

**(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.**

This factor favors Husband.

If Husband liquidates his premarital stock account, he may incur capital gains tax, although there may not be a gain as the stock has dropped in value. If Husband sells the premarital home, he will incur costs of sale (transfer tax and realtor fees.)

**(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.**

See above. The value of the marital home should be reduced by the costs of sale.

**(11) Whether the party will be serving as the custodian of any dependent minor children.**

No children were born of the marriage.

(Findings of Fact and Conclusions of Law, dated 8/31/23, at 12-16).

Ultimately, the court concluded that because of the "extremely short term nature of this marriage, both parties' ability to support themselves, and the minimal marital estate, the marital estate shall be distributed equally (50/50)." (*Id.* at 17). Thereafter, the court entered a final equitable distribution order stating that Husband shall retain his premarital residence; the parties shall retain all personal property and bank and financial accounts in their possession; and Wife may retain the Lincoln automobile, but must remove Husband's name from the car loan and reimburse Husband for tolls, tickets, or other traffic violations attributable to the Lincoln. (Final Equitable Distribution Order, dated 8/31/23).

On September 18, 2023, Wife filed a petition for reconsideration, arguing that the court erred in not properly considering her testimony. The court denied the petition on September 21, 2023. On February 28, 2024, the court entered a divorce decree which incorporated the equitable distribution order. Wife filed a timely notice of appeal on March 5, 2024. Pursuant to the

trial court's order, Wife filed a concise statement of errors complained of on appeal on March 27, 2024.[1]

Wife raises the following issue for our review:

1. Did the court err by entering an order contrary to the weight of the evidence by ignoring or discounting the following facts which were introduced into evidence, to such a degree that the evidence upon which the court relied upon was so tenuous, vague and uncertain that the Order shocks the conscience of the Court?

a. Husband's photographs of $100,000 in cash in Husband's safe deposit bank, and in the house, despite the fact that bank records confirm Husband's access and entry to the safe deposit box on the date of the photographs and Husband's cell phone dates the photographs of the cash at the time of the confirmed entry into the safe deposit box;

b. Photographs of $5,000 and $2,000 in cash;

c. Testimony from employee that Husband paid employees with cash;

d. Testimony that Husband operated a cash business and under reported his income on his tax returns;

e. Testimony that Husband routinely was paid in cash and saved the cash in a shoe box in the home and

---

[1] Initially, Wife filed a notice of appeal on March 5, 2024, from the final equitable distribution order dated August 31, 2023 and filed September 7, 2023. On March 27, 2024, this Court entered a rule to show cause explaining that if Wife was appealing the final divorce decree that made appealable the equitable distribution order, she was directed to file an amended notice of appeal including both orders. On April 17, 2024, we quashed the appeal after Wife failed to respond to the rule to show cause. Wife filed an application for reconsideration, which this Court granted on April 26, 2024. Thereafter, on May 1, 2024, Wife filed an amended notice of appeal from the equitable distribution order dated August 31, 2023 and filed September 7, 2023, and the divorce decree filed February 28, 2024.

would later deposit the cash into the safe deposit box;

f. Testimony of substantial work contracts for Husband's business including a job at Rolling Green Apartments;

g. Testimony that Wife contributed substantial money to Husband to improve the basement of the marital residence which was titled in Husband's name alone and which was awarded exclusively to Husband;

h. Testimony that Husband's expenses were in excess of his reported income;

i. Testimony that the principal mortgage reduction during the term of the marriage was $38,000;

j. Testimony that the 2016 Lincoln MKZ was a gift to Wife for assisting Husband to sobriety and failure by the court to factor in the trade-in value that Wife lost in the acquisition of the vehicle, for which Wife received no credit;

k. Testimony as to Husband's trips to South Carolina, Arizona, Las Vegas and Cabo San Lucas which reflected a lifestyle consistent with significantly higher income than Husband reported;

l. Evidence of the repair costs and expenses incurred by Wife for the 2016 Lincoln MKZ for which she received no credit.

(Wife's Brief at 8-9).

Wife presents her claims on appeal as one issue, namely, whether the court erred in issuing its equitable distribution order by misapplying the facts or improperly weighing the evidence before it. Wife argues that Husband was not credible in his testimony, and she claims that the court erred when it refused to accept her persuasive evidence to the contrary. Although she lists

twelve different sub-headings in her question presented, Wife did not sub-divide the argument section of her brief. Rather, she discusses three main points within her argument. First, Wife asserts that the court erred in its conclusion that the Lincoln automobile purchased during the marriage was marital property rather than a gift over which she should have had sole ownership. Second, Wife maintains that the trial court erred in its calculation of the cash assets of the marital estate. Specifically, she insists that the court erred in not finding that Husband retained access to a safe deposit box that held over $100,000. Wife posits that the evidence she submitted, including photos of cash, should have been sufficient for the court to find that there was $100,000 in cash in the safe deposit box. (*Id.* at 13-16). Finally, Wife contends that the court erred in its interpretation of Husband's tax returns and in its determination of the parties' income. Wife submits that the evidence she introduced of Husband's personal travel expenses demonstrated that he earned significantly more income than reported in his tax returns. Wife proclaims that Husband operated a cash business, and the court failed to account for the cash aspect of his business when it determined the parties' incomes. (*Id.* at 16-20). Wife concludes that the court erred when it weighed the evidence in fashioning the equitable distribution scheme, and this Court should remand for a new trial in equitable distribution. We disagree.

The following principles apply to our review of a trial court's equitable distribution order.

A trial court has broad discretion when fashioning an award of equitable distribution. **Dalrymple v. Kilishek**, 920 A.2d 1275, 1280 (Pa.Super. 2007). Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is "whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." **Smith v. Smith**, 904 A.2d 15, 19 (Pa.Super. 2006) (citation omitted). We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. **Id.** This court will not find an "abuse of discretion" unless the law has been "overridden or misapplied or the judgment exercised" was "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." **Wang v. Feng**, 888 A.2d 882, 887 (Pa.Super. 2005). In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. **Id.** "[W]e measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." **Schenk v. Schenk**, 880 A.2d 633, 639 (Pa.Super. 2005) (citation omitted).

> Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this [c]ourt will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

**Childress v. Bogosian**, 12 A.3d 448, 445-446 (Pa.Super. 2011) (quotation marks and internal citations omitted).

**Goodwin v. Goodwin**, 244 A.3d 453, 458 (Pa.Super. 2020), *aff'd*, ___ Pa. ___, 280 A.3d 937 (2022).

The Domestic Relations Code sets forth the following factors for the

court to consider when making its award of equitable distribution:

**§ 3502. Equitable division of marital property**

**(a) General rule**.--Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets. Factors which are relevant to the equitable division of marital property include the following:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time

the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S.A. § 3502(a).

Instantly, as set forth above, the trial court considered each of the factors outlined in Section 3502(a) when issuing its findings of fact and conclusions of law. In evaluating Wife's claims on appeal, the trial court opined that Wife was essentially asking it to "re-find facts, re-weigh evidence, and/or re-assess credibility to conform to her view of the evidence." (Trial Court Opinion, filed 5/13/24, at 3). The court explained that "as the finder of fact, [it] took into consideration all of the evidence, made independent factual determinations, assessed the credibility and sufficiency of the witnesses and evidence, and determined the weight that should be afforded the evidence pursuant to 23 Pa.C.S.A. § 3502(a)." (*Id.*) Specifically, the court explained that "Wife's testimony regarding the alleged existence of cash assets[, the deposit box allegedly containing $100,000,] as of the date of separation was not credible, and when combined with Wife's overall and general lack of credibility, [the court] properly exercised its discretion in not affording any

weight to her evidence." (**Id.** at 4).

The court further explained its specific findings as follows:

> [The] court found Husband's testimony that Wife failed to ever give him money for the marital residence to be credible, as opposed to Wife's self-serving testimony that she paid "8,000 to $10,000" for pre-marital renovations to the marital residence in the absence of any receipt or invoice documentation.
>
> Even if [the] trial court had found her testimony credible, any monies given to Husband would be a pre-marital gift unrecoverable in equitable distribution, since under Pennsylvania law, gifts and inheritance between spouses are usually considered to be non-marital property.
>
> \* \* \*
>
> [The] trial court found that although Wife was technically entitled to receive one-half of equity in the marital residence in the amount of $12,456, after calculation of all other assets and debts, she would owe Husband more than the $12,456, and would receive none of the home equity.
>
> \* \* \*
>
> [The] trial court considered the trade-in value that Wife relinquished to obtain a new vehicle during the marriage, however, the decision to trade in and purchase a new vehicle was during the marriage and therefore both spouses are presumed to have made the decision jointly.
>
> [The] trial court also placed no weight on the reasons why Husband obtained the 2016 Lincoln MKZ, this was a marital transaction in which both spouses assumed the risks associated with making a joint financial marital decision.
>
> … Wife cannot now claim that she is entitled to the trade-in value when she accepted the new vehicle during the marriage and continued to drive it well after the equitable distribution order was entered.
>
> \* \* \*

… There was no evidence to support the finding that marital trips are consistent with higher income for Husband, and only serve to support [the trial] court's finding that the parties lived a "fancy free" lifestyle beyond their joint means.

[The] trial court did find that it was difficult to assess income due to the cash income and disparities between profits and tax returns, however, that finding is not related to the marital trips.

\*    \*    \*

… Wife did not present any credible evidence that she paid for any repairs or expenses associated with her post-separation exclusive possession of the 2016 Lincoln MKZ, therefore, there was nothing for [the] trial court to consider as a credit.

(**Id.** at 4-5) (some capitalization omitted).

Our review of the record supports the court's findings. The trial court considered all evidence before it and was free to determine the weight to be afforded to all evidence presented. **See Goodwin, supra**. On this record, we see no reason to disrupt the court's credibility determinations in favor of Husband and against Wife. **See id.** Therefore, we see no abuse of discretion in the court's ruling. **Id.** Accordingly, we affirm.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  12/06/2024